HÉCTOR MEDINA MORALES y OTROS, demandantes y recurrentes, *v.* MERCK, SHARP & DHOME, QUÍMICA DE P.R., INC., demandada y recurrida.

*Número:* RE-91-205 *Resuelto:* 7 de abril de 1994

718

*Enrique J. Mendoza Méndez*, abogado de los recurrentes; *Juan Carlos Gómez Escarce* y *José A. González Burgos*, de *Fiddler, González & Rodríguez*, abogados de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca resolver si un tribunal puede, al amparo de la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dictar sentencia sumaria a base de una moción en la cual

se alega que procede desestimar la demanda, debido a que la parte promovida no cuenta con evidencia suficiente para probar una alegación esencial de su reclamación.

I

*Hechos*

El 12 de febrero de 1990 los Sres. Héctor Medina Morales, Hiram Fresses Torres y Noel Dávila Negrón, residentes en el Barrio Trinidad del Municipio de Barceloneta, presentaron una acción, como pleito de clase, "en protección de sus intereses y de los intereses o derechos de otras personas que residen o han residido" en dicho barrio y que tienen alegaciones de hechos y de derecho comunes a las de ellos. Reclamaron daños y perjuicios contra Merck, Sharp & Dohme, Química de Puerto Rico, Inc.[1] (en adelante Merck), una corporación dedicada a la manufactura y al comercio de productos químicos y farmacéuticos. Alegaron que las facilidades de la corporación demandada colindan con el vencindario de los demandantes y "[q]ue la codemandada [Merck había] violado y continúa violando la Ley Núm. 9 del 18 de junio de 1970, conocida como la 'Ley sobre Política Ambiental' (12 L.P.R.A. sec. 1121 y ss.) al estar contaminando con desperdicios o sustancias contaminantes el ambiente y la biosfera de las áreas que colindan con sus dependencias". Continuaron alegando que las actuaciones de Merck "constituyen un acto perjudicial a la salud, indecente y ofensivo a los sentidos e interrumpen el libre uso de la propiedad porque impiden el cómodo goce de la vida y de los bienes de los demandantes". Adujeron que estas actuaciones constituían una crasa violación al Art. 277 del Código de Enjuiciamiento Civil, Ley sobre Perturbación o Estorbo, 32 L.P.R.A. sec. 2761. Como consecuencia

---

[1] También se incluyeron como demandados de nombre desconocido (X, Y y Z) a aquellos que pudieran responder a los demandantes por los hechos y daños alegados en la demanda.

de las alegadas actuaciones negligentes de la codemandada Merck, señalaron haber sufrido daños en su salud y en sus propiedades.(²)

Luego de habérsele concedido una prórroga, el 19 de abril de 1990 la codemandada Merck contestó la demanda, aceptando algunas de las alegaciones, aclarando y negando otras. También adujo un total de veintitrés (23) defensas afirmativas. Junto con la contestación, presentó una moción informativa indicando que le había enviado a los codemandantes Medina Morales, Fresses Torres y Dávila Negrón un "Primer Grupo de Interrogatorios" al amparo de la Regla 30 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Este interrogatorio contiene cuatro (4) páginas de instrucciones, sesenta y dos (62) preguntas, cada una con varias subdivisiones, para un total de treinta (30) páginas.

El 13 de julio de 1990 Merck presentó una moción al amparo de la Regla 34 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para que se obligase a los demandantes a contestar adecuadamente el interrogatorio. Alegó que las contestaciones no eran responsivas y que, en ocasiones, los demandantes injustificadamente habían rehusado contestar, aduciendo, como fundamento para su objeción, que la información solicitada era privilegiada. Indicó, además, que los demandantes no habían solicitado una orden protectora ni consignado fundamento legal alguno para el alegado privilegio. Luego de una serie de trámites procesales, el 10 de septiembre de 1990 Merck presentó otra moción bajo la antedicha regla en la cual nuevamente objetó la contestación a *todos* los interrogatorios y solicitó la imposición de sanciones, incluyendo la desestimación de la

---

(²) Fresses Torres alegó que sufría " 'rash' en todo el cuerpo, mareos, ardor en la vista y picor en el cuello"; Dávila Negrón: "alergias, dolores de cabeza, catarros, fiebres, vómitos y picor en los ojos", y todos los residentes del área: "asma, hongo amarillo en la piel, alergias, irritación en los ojos, dolores de cabeza, 'rash' en todo el cuerpo, fiebres, vómitos y otras enfermedades."

demanda. También objetó la forma en que la parte demandante le sometió doscientos cincuenta (250) documentos.(³)

El 21 de septiembre de 1990 Merck presentó una moción en la que solicitó la sentencia sumaria. Apoyó su pedido en la norma procesal expuesta en *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Fundamentándose en las contestaciones objetadas, arguyó que se había demostrado que la parte demandante promovida no tenía evidencia admisible alguna para probar los elementos de las causas de acción alegadas en la demanda.

El 24 de septiembre de 1990 se celebró una conferencia sobre el estado del caso donde el tribunal, entre otras cosas, concedió un término para contestar la moción mediante la cual se objetó los interrogatorios y solicitó sanciones, y la moción de sentencia sumaria. El 25 de octubre de 1990 la parte demandante le solicitó al tribunal que, en relación con las objeciones a la contestación al interrogatorio, le ordenase a las partes "reunirse y conferenciar sobre las objeciones a fin de reducir al mínimo las controversias". Ese mismo día presentó una moción en oposición a la sentencia sumaria. La acompañó con los documentos siguientes:

(1) un memorando del investigador Héctor Correa al asesor científico Dr. Neftalí García, relativo a los efectos "sobre la salud de algunas de las sustancias detectadas por la Autoridad de Acueductos y Alcantarillados (AAA) en el sistema de alcantarillado en Barceloneta donde descarga la compañía farmacéutica [Merck]";
(2) una Orden Administrativa de 16 de agosto de 1988, en el caso DL 88-002-012 contra Merck, expedida por la Junta de Calidad Ambiental, adscrita a la Oficina del Gobernador, mediante la cual se le ordenó a Merck realizar una serie de gestiones con relación a quejas de la Comunidad del Barrio Trinidad de Barce-

---

(³) La parte demandada alega que "[s]i bien es cierto que los demandantes acompañaron con sus contestaciones un gran número de documentos, lo cierto es que en la contestación a los interrogatorios no se identificaron ni especificaron los mismos. Dicho de otra forma, la parte demandante no suministró un listado de los documentos identificados tal y como se le requería".

loneta y a un muestreo de aire que arrojó concentraciones de tolueno en cantidades de hasta 1013 (mg/1);(⁴)

(3) un recorte de periódico sobre aguas contaminadas en Manatí y Barceloneta; y

(4) un memorando de la Junta de Calidad Ambiental, de 19 de agosto de 1988, del Ing. Francisco Claudio Ríos, Jefe de la División de Permisos e Ingeniería, Area Calidad de Aire, al Presidente de la Junta, Santos Rohena Betancourt, sobre una investigación especial hecha a Merck.

El 5 de noviembre de 1990 el tribunal dictó una orden en relación con la moción para objetar las contestaciones a los interrogatorios. Ordenó que las partes se reunieran para "tratar dichas objeciones de buena fe, zanjar obstáculos y reducir al mínimo la controversia sobre dichas contestaciones". Le impuso a Merck, específicamente, el deber de promover la reunión. Señaló, también, que no haría nada más sobre dicho asunto hasta que se le informase, por escrito, el resultado de la reunión. Añadió que, una vez recibido el informe, celebraría una vista para escuchar a

---

(⁴) Se le ordenó a Merck, Sharp & Dohme, Química de Puerto Rico, Inc. (en adelante Merck) lo siguiente:

"1. Que someta un informe detallado de todo lo ocurrido en relación con esta situación delimitando el área afectada.

"2. [Merck] suspendió la descarga de tolueno (en concentraciones mayores que los niveles de solubilidad) desde el 11 de agosto de 1988 y continuará de esta forma hasta tanto la Junta lo autorice, una vez se demuestre que se ha resuelto la situación.

"3. [Merck] someterá de INMEDIATO un plan de acción que incluirá lo siguiente:

"- muestreo de aire y agua del área afectada;

"- *corregir el sistema de ventilación* de la línea industrial;

"- en coordinación con la AAA realizará un estudio con cámaras de televisión para determinar la *integridad de la línea* y la *efectividad de las trampas sanitarias de las viviendas* conectadas a dicha línea;

"- en coordinación con la Autoridad de Carreteras y la AAA, *destapar las alcantarillas que estén obstruidas* en la Carretera PR–2, del área afectada.

"4. [Merck] realizará un estudio en la comunidad para evaluar el impacto de los gases, y el tolueno en particular, en la *salud* de los residentes del Barrio Trinidad de Barceloneta.

"5. [Merck] desarrollará un programa de información y relaciones públicas con la Comunidad Trinidad para mantenerla informada de todo lo que esté sucediendo.

"6. [Merck] someterá a la Junta toda la información recopilada sobre esta situación incluyendo, pero no limitado a, resultados de cualquier muestreo realizado." (Énfasis suplido.)

las partes en cuanto a los aspectos que aún estuviesen en controversia.

Luego de una serie de mociones,(5) el 28 de noviembre de 1990 el tribunal celebró una vista en la cual, a solicitud de Merck y con la anuencia de la parte demandante, se paralizó el descubrimiento de prueba, incluso lo relacionado con las objeciones a las contestaciones a los interrogatorios, hasta tanto se resolviese la solicitud de sentencia sumaria. Ese mismo día la parte demandante presentó una moción en la que anunciaba al Dr. Neftalí García como su perito en materias ambientales.

Así las cosas, el 13 de marzo de 1991 el foro de instancia dictó una sentencia sumaria a favor de Merck. En ésta hizo un recuento de los hechos procesales, analizó los documentos sometidos por las partes y concluyó que las contestaciones provistas por la parte demandante a los interrogatorios que le fueran notificados denotaban que carecían de información y evidencia admisible para probar los elementos de una causa de acción en daños y perjuicios, la existencia de un estorbo y violaciones a las leyes ambientales. Además, descartó varios de los documentos sometidos por las partes por considerarlos impertinentes e inadmisibles. Resolvió, también, citando el caso *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. 434 (1988), que "[u]na lectura de las respectivas contestaciones a [los] interrogatorios claramente demuestra que en el ... caso no existen los requisitos ... para que [éste] pueda ser certificado como uno de clase bajo la Regla 20 de Procedimiento Civil". Finalmente, determinó que la parte demandada había cumplido con su obligación de demostrar que no existía una controversia genuina y material sobre hecho esencial alguno y que la

---

(5) Entre éstas, una moción para objetar las contestaciones a los interrogatorios, una moción de sentencia sumaria, una moción de reconsideración de Merck relativa a la Orden de 5 de noviembre de 1990 y una moción de los demandantes para suplementar su oposición a la moción de sentencia sumaria, acompañada con un documento titulado "Análisis Ambiental para la Relocalización de una Línea Sanitaria para [Merck]", de junio de 1990, preparado por Lebrón Associates.

demandante no contaba con evidencia admisible para sustentar las alegaciones de la demanda. Procedió, entonces, a desestimar la demanda con perjuicio.

Inconforme, la parte demandante recurrió ante este Foro alegando, en síntesis, que el tribunal de instancia erró al aplicar la doctrina jurisprudencial expuesta en el caso *Celotex Corp. v. Catrett*, supra, y al dictar la sentencia sumaria que desestimó la demanda. Decidimos revisar y expedimos el recurso.

## II

*Normas procesales aplicables*

La resolución de la controversia procesal que confrontamos requiere que analicemos la Regla 36 de Procedimiento Civil, relativa a la sentencia sumaria y su interrelación con las Reglas 23 a 34 que rigen el descubrimiento de prueba, la Regla 20 sobre pleitos de clase, la Regla 43.6, sobre el remedio a concederse, y la norma rectora de hermenéutica procesal esbozada en la Regla 1. 32 L.P.R.A. Ap. III.

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional que procede cuando la parte promovente le demuestra al tribunal que no existe necesidad de que se celebre una vista evidenciaria del caso en su fondo. Como regla general, se dicta sentencia a base de los documentos admisibles en evidencia sometidos por el promovente con su moción, los documentos sometidos por la parte promovida con su moción en oposición y aquellos que obran en el expediente del tribunal. Tradicionalmente los tribunales han acogido las mociones de sentencia sumaria acompañadas con documentos admisibles en evidencia cuando se demuestra que no hay hechos materiales esenciales en controversia y que procede, como cuestión de derecho, que ésta se dicte. En otras palabras, se dicta sentencia sumaria cuando ha quedado claramente es-

tablecido que para resolver la controversia no hace falta una vista evidenciaria. Bajo estas circunstancias, la norma de economía procesal (Regla 1 de Procedimiento Civil, *supra*) aconseja que se solucione el pleito de esta forma expedita. Reglas 1, 36 y 43.6 de Procedimiento Civil, *supra; Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986).

El caso de *Celotex Corp. v. Catrett*, supra, presenta una modalidad distinta con relación a la moción de sentencia sumaria.[6] Ésta consiste en la utilización de dicha moción cuando la parte promovida tiene el peso de la prueba y la parte promovente puede demostrar que aquélla carece de evidencia para probar algún elemento material esencial de su reclamación. En *Celotex Corp. v. Catrett*, supra, el Tribunal Supremo de Estados Unidos señaló que, bajo esta modalidad, no es necesario que la parte promovente acompañe su moción con documentos. Si la parte promovente, luego de haber transcurrido un tiempo adecuado y razonable para el descubrimiento de prueba, puede demostrar que del récord del tribunal surge que la parte promovida no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda. Véanse: Regla 5(d) de Procedimiento Civil federal, 28 U.S.C.; 4A *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1152, págs. 438–443 (1990). Bajo estas circunstancias —el Tribunal razonó— no puede decirse que hay genuinas controversias sobre hechos materiales, pues la ausencia de prueba

---

[6] El Juez Rehnquist escribió la opinión mayoritaria, a la cual se unieron cuatro (4) Jueces. El Juez White escribió una opinión concurrente. El Juez Brennan escribió una opinión disidente, a la que se unieron dos (2) Jueces. El Juez Stevens también escribió una opinión disidente.

En 1986 el Tribunal Supremo de Estados Unidos, aparentemente para promover la utilización del mecanismo procesal de la sentencia sumaria, decidió una trilogía de casos sobre su aplicación: *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

sobre un hecho esencial indispensable para el caso de la parte promovida convierte en totalmente innecesarios todos los demás hechos. *Celotex Corp. v. Catrett*, supra, págs. 322–323.

■ Como podrá observarse, este análisis parte de la premisa de que en los autos originales del caso va a aparecer todo lo relacionado con el descubrimiento de prueba, de forma tal que el tribunal, al presentarse la moción, pueda examinarlo y cerciorarse de que el descubrimiento de prueba llevado a cabo ha sido adecuado y, a la luz de lo que allí consta, pueda concluir, con relativa certeza, que efectivamente la parte promovida no cuenta con evidencia suficiente para probar algún hecho esencial y material de su reclamación. Conforme a las Reglas de Procedimiento Civil federal, el tribunal puede realizar este análisis sin que se le presente documento alguno con la moción que solicita la sentencia sumaria, ya que en el expediente del tribunal va a constar *todo* lo relacionado con el descubrimiento de prueba,[7] al igual que cualquier otro documento que haya sido presentado con alguna moción. Regla 5(d) de Procedimiento Civil federal, *supra*.

■ En Puerto Rico, desde la aprobación de las Reglas de Procedimiento Civil en 1979, la situación es distinta a la prevaleciente en la jurisdicción federal. Aquí impera "[un] esquema [de] descubrimiento de prueba extrajudicial, [que] fomenta una mayor flexibilidad y cooperación entre [las partes]". *Lluch v. España Service Sta.*, 117 D.P.R. 729, 743 (1986). Véanse: *Amaro González v. First Fed. Savs.*, 132 D.P.R. 1042 (1993); Regla 67.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Esto significa que, de ordinario, en el

---

[7] Para una crítica a la opinión mayoritaria, véase la opinión disidente del Juez Brennan en *Celotex Corp. v. Catrett*, supra. Sobre el particular también se han escrito numerosos artículos de revistas jurídicas. A manera de ejemplo, véanse: M.L. Nelken, *One Step Forward, Two Steps Back: Summary Judgment After Celotex*, 40 Hastings L.J. 53 (1988); R. Miller Jacobs, *Supreme Court's 1986 Summary Judgment Triology: A Proposed Analytical Model*, 54 (Núm. 4) Def. Couns. J. 502 (Oct. 1987).

expediente del tribunal no aparecerá materia alguna relacionada con el descubrimiento de prueba. Ésta constará en el récord del tribunal sólo cuando una de las partes la haya presentado para fundamentar alguna petición al tribunal, como por ejemplo: una solicitud al amparo de la Regla 34, *supra*, por la negativa de la parte contraria a descubrir lo solicitado; una orden protectora bajo la Regla 23.2 (32 L.P.R.A. Ap. III), o una previa moción de sentencia sumaria bajo la Regla 36, *supra*.

A pesar de que el descubrimiento de prueba es extrajudicial, en casos complejos o en casos que implican cuestiones de interés público el tribunal juega un papel importante en el manejo de todo lo relacionado con éste. En *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838, 849–850 (1986), alertamos a los tribunales de instancia a estar prestos a reconocer e identificar los casos en los que, por tener multiplicidad de partes o *controversias de hechos o derecho complejas y técnicas*, sea necesario ofrecer un manejo distinto al descubrimiento de prueba. Allí expresamos que "[e]n casos complejos ... los jueces tienen que mantenerse alertas al potencial que existe para el abuso, ya sea por el uso inadecuado o excesivo de los mecanismos de descubrimiento. Tienen que estar dispuestos a intervenir mediante la emisión de guías y órdenes apropiadas para conjurar los problemas en sus inicios". Íd., pág. 849. Exhortamos a los tribunales de instancia a que desde el comienzo de la acción "identifique[n] los problemas potenciales y tome[n] control del caso". Íd., págs. 849–850. Factores tales como los recursos de las partes y a cuál de ellas le es más fácil producir cierta clase o tipo de prueba deben, entre otros, tomarse en consideración, tanto al estructurar el desenvolvimiento del descubrimiento de prueba como al entender en mociones para que se conteste un interrogatorio o para que se emitan órdenes protectoras. Estos factores también juegan un rol importante al evaluar la adecuacidad del descubrimiento realizado.

■ De otra parte, en *Aponte v. Sears Roebuck de P.R., Inc.*, 129 D.P.R. 1042 (1992), tuvimos la oportunidad de examinar la interrelación entre las Reglas 30.1, 34.1 y 67 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Allí resolvimos "que si una parte a la cual se le notifica un interrogatorio objeta alguna pregunta y cumple con lo dispuesto en la Regla 30.1 de Procedimiento Civil, *supra* —notificándole a la parte que notificó el interrogatorio las contestaciones a las preguntas no objetadas junto con la objeción— no viene obligada a contestar la pregunta objetada a menos que el tribunal, al considerar una moción al amparo de la Regla 34.1 de Procedimiento Civil, *supra*, así lo ordene". Íd., pág. 1052.

■ También hemos resuelto que, como regla general, la omisión de contestar alguna pregunta en un interrogatorio, especialmente cuando la información solicitada está en manos de la parte adversa que envió el interrogatorio, no puede servir de fundamento para una sanción tan severa como la desestimación de la demanda. Hay que tener presente que sanciones drásticas, como la desestimación, no se favorecen a menos que se demuestre que la conducta ha sido intencional. *A.R.P.E. v. Chang Louk*, 113 D.P.R. 295, 297 (1982); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982).

■ Reiteradamente hemos expresado que los interrogatorios constituyen la espina dorsal del descubrimiento de prueba. *Aponte v. Sears Roebuck de P.R., Inc.*, supra. Éstos, aunque amplios y abarcadores, deben cumplir con criterios de razonabilidad. Un amplio y adecuado "descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959). El alcance del descubrimiento de prueba está limitado sólo a que la información solicitada

sea pertinente al asunto en controversia y no sea privilegiada. *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 38–39 (1986). Con respecto al concepto de pertinencia, hemos resuelto que éste es más amplio que el utilizado con relación a la admisibilidad de prueba y que basta con que exista una posibilidad razonable de relación con el asunto en controversia. *Rodríguez v. Scotiabank de P.R.*, 113 D.P.R. 210, 212–213 (1982). La propia Regla 23.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone, específicamente, que "[n]o constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible". Una persona que estime que los mecanismos de descubrimiento de prueba están siendo utilizados de tal forma que constituyen un "hostigamiento, perturbación u opresión", o que éstos están dando lugar a gastos o molestias indebidas, puede recurrir al tribunal en solicitud de una orden protectora. Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

## II

*Sentencia sumaria — modalidad de la insuficiencia de la prueba*

Nuestra citada Regla 36 sobre la sentencia dictada sumariamente tomó como modelo la Regla 56 de Procedimiento Civil federal, 28 U.S.C. Sin embargo, la interpretación de la Regla 56 hecha por el Tribunal Supremo de Estados Unidos en *Celotex Corp. v. Catrett*, supra, aunque persuasiva, no nos obliga. Al considerar la adopción o adaptación de cualquier interpretación de las normas procesales, hay que tener presente las características y necesidades particulares de los procesos seguidos en nuestro foro.

Con relación al descubrimiento de prueba, existen algu-

nas diferencias entre la jurisdicción federal y la nuestra. Tal y como señaláramos antes, una de éstas la constituye la presencia de la prueba descubierta en el récord del tribunal; un hecho medular para la norma establecida por el Tribunal Supremo de Estados Unidos en *Celotex Corp. v. Catrett*, supra. En cuanto a la interpretación de la Regla 56 enunciada por el Tribunal Supremo federal en *Celotex Corp. v. Catrett*, supra, resulta importante considerar no sólo las diferencias procesales respecto al descubrimiento de prueba, sino también el hecho de que la jurisdicción federal, por ser de naturaleza limitada, no confronta los mismos tipos de problemas procesales que genera un sistema de jurisdicción general como el nuestro. Con esto en mente, pasemos a examinar la modalidad de la moción de sentencia sumaria por insuficiencia de la prueba, según la habremos de implantar en nuestra jurisdicción.

 Bajo la modalidad de la sentencia sumaria por insuficiencia de prueba, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria, alegando la insuficiencia de prueba por parte del promovido. La moción puede acompañarla con todos los documentos relacionados con el descubrimiento de prueba o sin documento alguno, si éstos obran en el expediente del tribunal. La parte promovente tiene el peso de demostrarle al tribunal que la parte promovida no cuenta con una evidencia admisible suficiente para probar, por lo menos, un elemento esencial indispensable para su caso. Puede, además, acompañar su moción con una evidencia afirmativa, no necesariamente obtenida mediante la utilización de los mecanismos de descubrimiento de prueba, que niegue algún elemento esencial de la reclamación de la parte promovida.

 Con relación a la moción de sentencia sumaria que se acompaña con una evidencia afirmativa, la parte promovida podrá derrotarla con sólo presentar una oposi-

ción acompañada con una prueba que controvierta o que rebata la evidencia afirmativa presentada por el promovente. Esta prueba en oposición a la sentencia sumaria puede ser admisible en evidencia o, aunque no sea admisible en la forma presentada, podría convertirse en una prueba admisible o dar lugar a una prueba admisible.

Bajo cualesquiera circunstancias, al presentarse una moción de sentencia sumaria por insuficiencia de la prueba, la parte promovente tiene el peso afirmativo de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, o sea, que ha explorado concienzudamente la posibilidad de la existencia de una evidencia admisible.[8] Esto significa que tiene que poner al tribunal en posición de evaluar la adecuacidad del descubrimiento de prueba que realizó.[9] Una simple alegación en la cual se concluya que no existe una evidencia suficiente para probar el caso no basta para apoyar una moción de sentencia sumaria de esta naturaleza. Tampoco se considerará adecuado el descubrimiento de prueba cuando un análisis de los documentos sometidos con la moción, con la oposición y aquellos que constan en el récord, refleje que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener una prueba admisible. Por ejemplo, ha dejado de deponer o de someter un interrogatorio con relación a un testigo que pueda proveer un testimonio relevante. Bajo estas circunstancias, hay que concluir que no ha realizado un descubrimiento completo y adecuado, ya que el tribunal no puede determinar, con certeza, que la parte promovida no cuenta con evidencia suficiente para probar su caso. Para

---

[8] En *Celotex Corp. v. Catrett*, supra, pág. 326, el Tribunal indicó que otro hubiera sido el resultado si la moción de sentencia sumaria se hubiera presentado antes de que se realizara un extenso descubrimiento de prueba.

[9] Con relación a las críticas sobre las recién aprobadas enmiendas a las Reglas de Procedimiento Civil federales sobre el descubrimiento de prueba obligatorio, véanse: J.C. Koski, *Mandatory Disclosure*, A.B.A. Journal, Feb. 1994, págs. 85–87; *Early Discovery Adopted*, A.B.A. Journal, Feb. 1994, pág. 16.

que se pueda dictar una sentencia sumaria por insuficiencia de la prueba, el promovente tiene que persuadir al tribunal de que no es necesario celebrar una vista evidenciaria; que el promovido no cuenta con prueba suficiente para probar un hecho esencial, y que, como cuestión de derecho, procede que se desestime la reclamación.

Resumiendo, para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas: presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en admisible —aunque de momento no lo sea— o que dé lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible y que derrotaría la contención de insuficiencia del promovente; que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o que éste, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.

A la modalidad de la sentencia sumaria por insuficiencia de la prueba le aplican todas las normas y los principios que tradicionalmente hemos indicado deben utilizarse por los tribunales al entender en una moción de sentencia sumaria. Por lo tanto, cuando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida. *Corp. Presiding Bishop CJC of LDS. v. Purcell*, supra, pág. 720; *Valcourt Questell v. Tribunal Superior*, 89 D.P.R. 827, 832 (1964); *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963). Sólo debe concederse la moción de sentencia sumaria para desestimar una reclamación cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la

prueba, pues hay que recordar que el tribunal resolverá lo que proceda en derecho y no necesariamente lo que se le solicita. En cuanto a los documentos que se presenten, éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 721.

Apliquemos estas normas procesales a los hechos del caso ante nuestra consideración.

## IV

*Aplicación de las normas procesales a los hechos*

En este caso, varios residentes del Barrio Trinidad del Municipio de Barceloneta presentaron una acción contra la compañía farmacéutica Merck donde alegaron que ellos y otras personas similarmente situadas, a las que pretendían representar, habían sufrido daños debido a que ésta había contaminado el ambiente y la biosfera en las áreas que colindan con sus residencias. Como podrá observarse, de la faz de la demanda surgía que se trataba, potencialmente, de un caso complejo, tanto porque se pretendía llevar un pleito de clase como por los hechos técnicos que entrañan una controversia sobre daños relacionados con una contaminación ambiental. Una vez el juez advino en conocimiento de esto, al presentársele la primera moción relacionada con el descubrimiento de prueba, debió asumir un rol activo en el manejo del caso, especialmente en todo lo concerniente al descubrimiento de prueba y a la posibilidad de que el caso realmente ameritara continuarse como una acción de clase. *Vellón v. Squibb Mfg., Inc.*, supra.

Cuando Merck presentó la moción de sentencia sumaria fundamentada en la ausencia de prueba, aún estaban pendientes por resolver sus objeciones a las contestaciones al interrogatorio. Además, la parte demandante, inexplicablemente, aún no había comenzado a utilizar los mecanis-

mos de descubrimiento de prueba. El foro de instancia, entonces, en vez de asumir un rol activo en el manejo del caso y emitir órdenes para lograr que se llevase a cabo un adecuado, apropiado y ordenado descubrimiento de prueba por las partes, paralizó el descubrimiento hasta tanto no se resolviera la moción de sentencia sumaria, presentada por Merck, fundada precisamente en la insuficiencia de la prueba. Ese mismo día la parte demandada anunció al Dr. Neftalí García como su perito en materias ambientales.

De estos hechos procesales surge, con meridiana claridad, que Merck no había puesto al tribunal en posición de poder resolver que la parte demandante no contaba con prueba admisible suficiente para probar los elementos esenciales de su reclamación. Al dictar sentencia sumaria para desestimar la demanda, el tribunal aún no había resuelto la moción para objetar la contestación a los interrogatorios y recién se había anunciado un perito sobre materias ambientales en relación con el cual Merck no había podido descubrir prueba alguna. Además, existían ciertos documentos en récord que debieron conducir a la parte promovente a ampliar el descubrimiento de prueba para asegurarse de que los demandantes, efectivamente, no contaban con evidencia suficiente para probar su reclamación. La moción resultaba prematura, ya que el descubrimiento de prueba obviamente no se había completado. Tampoco constaba en récord una evidencia suficiente para llegar a la determinación de que no procedía la certificación de un pleito de clase.([10])

En la etapa en que se encuentra este caso no hay fundamento para determinar que los demandantes no cuentan con una evidencia admisible suficiente para probar su caso.

---

([10]) En *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. 434 (1988), esbozamos los criterios que deben estar presentes para que un tribunal certifique que una acción procede como una de clase. Incitamos a los tribunales de instancia a tomar las medidas necesarias para la eficiente estructuración y reglamentación de su trámite.

Resolvemos, pues, que no procede la desestimación sumaria de la demanda por insuficiencia de prueba.

Por todo lo antes expuesto, *procede que se dicte sentencia revocando la emitida por el foro de instancia y se devuelva el caso a dicho foro para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Negrón García se inhibió.