TEXTO COMPLETO DE LA SENTENCIA
Nos corresponde determinar si actuó correctamente el Tribunal de Primera Instancia al declarar con lugar una moción de sentencia sumaria por insuficiencia de la prueba. Entendemos que sí. Confirmamos tal dictamen.
I
La Sra. María Socorro de Hoyos y su hija Yimarie Quiris de Hoyos (las apelantes), presentaron una demanda sobre daños y perjuicios por alegada mala práctica de la medicina en contra del Dr. Víctor Ortiz Justiniano (Dr. Ortiz), entre otros.
Se alegó en la demanda que el 1ro. de octubre de 1996, la joven de 18 años Wilmarie Quiris de Hoyos, hija y hermana de las apelantes, fue sometida a una cirugía electiva de corrección por una deformidad en la caja toráxica denominada como “pectus excavatus...”, practicada por los Dres. Ortiz, Edgar Ramírez Nazario y Marcial Bosch, este último anestesiólogo.
Las apelantes aseveraron en su demanda que durante la cirugía, la paciente sufrió un paro cardiaco que desembocó en estado de coma, él cual duró aproximadamente 8 meses. Wilmarie finalmente falleció.
El 18 de mayo de 1999, se celebró la primera conferencia para ordenar el trámite procesal del caso. En la misma se le concedió a las apelantes hasta el 15 de julio de 1999 para informar su prueba pericial. Llegado ese día, las apelantes solicitaron un término adicional, el cual les fue concedido.
*934 El 25 de agosto de 1999, el foro sentenciador ordenó nuevamente a las apelantes que anunciaran su prueba pericial. El 30 de agosto del mismo año, las apelantes informaron la contratación del perito^ Dr. Lidy López, especialista en pediatría. En esa misma fecha, se les concedió hasta el 20 de septiembre de 1999 para que produjeran el informe pericial. Además, el Tribunal de Primera Instancia coordinó con las partes litigantes todo el trámite de descubrimiento de prueba, incluyendo 5 fechas para la toma de deposiciones.
El 20 de septiembre de 1999, las apelantes notificaron el informe pericial preparado por el Dr. Lidy López a las demás partes litigantes.
El 10 de noviembre de 1999, el Dr. Ortiz presentó una moción de sentencia sumaria por insuficiencia de la prueba, ya que del referido informe no surgían imputaciones de negligencia en su contra y sí en la del anestesiólogo.
El 13 de diciembre de 1999, el Tribunal de Primera Instancia dictó una orden mediante la cual ordenp al Administrador del Centro Médico de Mayagüez permitir la entrada del perito de las apelantes para que éste inspeccionara la sala de operaciones y los récords médicos originales de Wilmarie.
El 21 de diciembre de 1999, se celebró una conferencia sobre el estado de los procedimientos. Se pautó la deposición al perito de las apelantes para el 3 de febrero de 2000. Se ordenó a éstas que, debido al contenido limitado del informe, formalizaran un informe revisado en cuanto a la negligencia, si alguna, del Dr. Ortiz, 20 días antes de la deposición, es decir, el 19 de enero de 2000. 
El 9 de febrero de 2000, las partes litigantes informaron al foro sentenciador que la deposición del perito de las apelantes no se había llevado a cabo, ya que no produjeron el informe pericial revisado.
El Dr. Ortiz nuevamente presentó una moción de sentencia sumaria por insuficiencia de la prueba, debido a la ausencia de evidencia demostrativa de la posible negligencia incurrida por él.
El 8 de marzo de 2000 el Tribunal de Primera Instancia dictó la sentencia apelada. Declaró con lugar la moción de sentencia sumaria y desestimó la demanda. El foro apelado consideró que las apelantes habían "...tenido amplia oportunidad durante el descubrimiento de prueba de informar la prueba pericial que apoyara su reclamo de responsabilidad atribuible al cirujano...”. [L]a prueba pericial de [las apelantes] no ha establecido que el cirujano demandado no haya cumplido con las normas mínimas de cuidado o de tratamiento al paciente y que esto le haya provocado la lesión. 
Insatisfechas, las apelantes acuden ante nos. Le imputan al Tribunal de Primera Instancia haber errado al dictar sentencia sumaria por insuficiencia de la prueba. Sostienen que fue una actuación prematura, ya que necesitan tiempo adicional para culminar el descubrimiento de prueba.
Contando con el beneficio de la comparecencia del Dr. Ortiz, pasamos a resolver el recurso de epígrafe.
II
La Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36, regula todo lo concerniente a la figura jurídica de la sentencia sumaria. El propósito de dicho mecanismo, es aligerar la tramitación de los casos al permitir que se dicte sentencia sin necesidad de celebrar una vista evidenciaría. Esto, cuando de los documentos no controvertidos que se acompañan con la solicitud y de la totalidad de los autos, surge que no existe controversia sobre los hechos materiales, por lo cual sólo corresponde aplicar el derecho. P.A.C. v E.L.A., 150 D.P.R. _ (2000).
El Tribunal Supremo ha resuelto que la sentencia sumaria sólo debe dictarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo *935 cualquier circunstancia que resulte discernible de la prueba. Tiene, pues, el promovente de la moción, la carga inicial de la prueba. Además, el tribunal examinará la evidencia ante sí de la forma más favorable al promovido. Pérez v. El Vocero de P.R., 149 D.P.R. _ (1999), 99 J.T.S. 160.
El recurso de epígrafe nos enfrenta a la modalidad de la moción de sentencia sumaria por insuficiencia de la pmeba. Para evaluar adecuadamente una solicitud de sentencia sumaria en la modalidad de insuficiencia de la pmeba, resulta indispensable que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de pmeba adecuado. De hecho, la parte promovente tiene el peso afirmativo de demostrar que se ha llevado a cabo un descubrimiento de pmeba completo, adecuado y apropiado; o sea, que ha explorado concienzudamente la posibilidad de la existencia de evidencia admisible. Pérez v. El Vocero de P.R., Id; Medina v. M. S.&.D. Química de P.R., Inc., 135 D.P.R. 716 (1994).
Para que un tribunal pueda dictar sentencia sumaria por insuficiencia de la pmeba, el promovente de la moción tiene que persuadirlo de cada uno de los siguientes elementos: (1) que no es necesario celebrar una vista evidenciaría; (2) que el demandante promovido no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) que como cuestión de derecho, procede la desestimación de la reclamación. Pérez v. El Vocero de P.R., supra; Medina v. M. S.& D. Química de P.R., Inc., supra.
En Medina v. M. S.& D. Química de P.R., Inc., supra, el Tribunal Supremo dispuso que:

“...para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas, presentar con su oposición prueba admisible en evidencia, o prueba que pueda convertirse en admisible, aunque de momento no lo sea, o que de lugar a prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; o que hay prueba en el récord que puede convertirse en prueba admisible y que derrotaría la contención de insuficiencia del promovente; o que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que éste, por su naturaleza, no es un caso que conviene se resuelva por el mecanismo expedito de la sentencia sumaria. ”

III
Tomando los principios enunciados en el acápite anterior como norte, nos corresponde en primer término discutir los elementos esenciales de la causa de acción de las apelantes, los cuales éstas venían obligadas a probar, para luego determinar si contaban con la pmeba pertinente a esos efectos.
La norma de cuidado médico exigible al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P. R.A. 5141, es aquella atención médica que a la luz de los modernos medios de comunicación y enseñanza y conforme al estado de conocimiento de la ciencia y de la práctica de la medicina, satisfacen las exigencias generalmente reconocidas por la profesión. Ramos Robles v. García Vicario, 134 D.P.R. 969 (1993). El demandante debe establecer mediante pmeba pericial cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en el tratamiento de determinado tipo de pacientes. Esa pmeba deberá demostrar cuáles son las exigencias de toda la profesión, a la luz de los conocimientos científicos disponibles, mediante los medios de comunicación y programas de educación continuada, así como las normas de consentimiento informado aplicables al caso y la razón por la cual el médico demandado no cumplió con las mismas. Rodríguez Crespo v. Hernández, 121 D.P.R. 633, 650 (1988).
Al médico lo acompaña la presunción de que ha ejercido un grado razonable de cuidado y de que el tratamiento fue adecuado. El que un paciente haya sufrido un daño o que el tratamiento no haya tenido éxito, no crea ninguna presunción de negligencia por parte del médico. Rodríguez Crespo v. Hernández, Id.
Corresponde a la parte demandante demostrar, mediante preponderancia de pmeba, que el tratamiento médico ofrecido por el demandado fue la causa eficiente que con mayor probabilidád ocasionó el daño. Esta *936 relación de causalidad no se establece a base de una mera especulación o conjetura. Blas v. Hosp. Guadalupe, 146 D.P.R. _ (1998), 98 J.T.S. 101.
Para establecer prima facie un caso de daños y perjuicios por negligencia de un médico, el demandante tiene: (1) que presentar prueba sobre las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) demostrar que el demandado incumplió con estas normas en el tratamiento del paciente, y (3) que esto fue la causa de la lesión sufrida por el paciente. En el caso de un especialista, éste debe tener los conocimientos profesionales, así como las destrezas y competencias de los médicos o especialistas con la misma especialidad. Medina Santiago v. Vélez, 120 D.P.R. 380, 384-385 (1988).
IV
La pregunta de rigor es si las apelantes contaban con la evidencia suficiente para probar los elementos esenciales de su caso. Entendemos que no. Por lo tanto, coincidimos con el criterio del foro sentenciador de dictar sentencia sumaria por insuficiencia de la pmeba. Veamos.
El Dr. Ortiz, al presentar su moción de sentencia sumaria por insuficiencia de la prueba, definitivamente persuadió al Tribunal de Primera Instancia de que las apelantes no contaban con evidencia suficiente para probar los hechos esenciales de la causa de acción por impericia médica, ésto luego de que tuvieran amplia oportunidad de realizar el descubrimiento de prueba y que, como cuestión de derecho, procedía la desestimación de la reclamación. Pérez v. El Vocero de P.R., supra.
Las apelantes, en su oposición, expresan que: ”[N]o existe duda de que... tiene[n] información suficiente para... imputar actos negligentes al [Dr. Ortiz]." Sin embargo, no presentan prueba alguna que demuestre los elementos esenciales de su reclamación. Medina v. M. S.& D. Química de P.R., Inc., supra. Al contrario enuncian una serie de hipótesis, preguntas y asunciones no sustanciadas por evidencia alguna.
Además, se escudaron en el débil argumento de que se encontraban en la etapa de descubrimiento de prueba, por lo que la moción era prematura. Nada más lejos de la realidad. Curiosamente, en su oposición, las apelantes manifiestan que le habían tomado una deposición al Dr. Ortiz, a la enfermera de sala y a la anestesista. También surge de los autos que el Tribunal de Primera Instancia emitió una orden mediante la cual ordenó al Administrador del Centro Médico de Mayagüez que permitiera la entrada del perito de las apelantes para que inspeccionara la sala de operaciones y los récords médicos originales de Wilmarie. Además, las apelantes notificaron interrogatorios y recibieron las contestaciones correspondientes.
Del recuento procesal del caso relatado en el acápite primero de la sentencia, surge que el Tribunal de Primera Instancia asumió un rol activo en todo el proceso de descubrimiento de prueba. Actuó con flexibilidad y le concedió a las apelantes múltiples oportunidades para que anunciaran su prueba pericial. El foro apelado también coordinó las fechas para toma de deposiciones.
Finalmente, debido al contenido limitado del informe del perito de las apelantes, les brindó la oportunidad de presentar un informe revisado en el cual se hiciera referencia a la posible negligencia alegadamente incurrida por el Dr. Ortiz. Las apelantes no presentaron el mismo.
Por lo tanto, la única evidencia con la que cuentan las apelantes para probar los hechos esenciales de su reclamación, lo constituye el informe pericial rendido por el Dr. Lidy López, en el cual éste concluye que el responsable de la seguridad cardiorespiratoria del paciente es el anestesiólogo, no el Dr. Ortiz.
Definitivamente, las apelantes no cuentan con evidencia para probar que el Dr. Ortiz se alejó de la norma de cuidado exigida a los médicos y que ésto fue la causa de la muerte de Wilmarie. Como vimos con anterioridad, ésto no se establece con meras especulaciones o conjeturas. Blas v. Hosp. Guadalupe, supra.
*937 En atención a lo expresado, no se cometió el señalamiento de error apuntado por las apelantes.
V
Por los fundamentos expuestos, se confirma la sentencia apelada.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2001 DTA 68
1. Ese día, las apelantes anunciaron que habían transigido la reclamación en cuanto al anestesiólogo, su compañía aseguradora y el Estado Libre Asociado.
2. Págs. 10 y 11 de la sentencia apelada.
3. Pág. 3 de la Réplica a Moción de Sentencia Sumaria, presentada por las apelantes.