Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JANELIZ JIMÉNEZ CORTÉS, MARGARITA CORTÉS, DAVID JIMÉNEZ<br><br>Apelante<br><br>v.<br><br>DOCTOR´S CENTER SAN FERNANDO DE LA CAROLINA, HOSPITAL DE CAROLINA Y OTROS<br><br>Apelados<br><br>************************ | TA2025AP00396<br><br><br><br><br><br><br><br>Consolidado con | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de CAROLINA<br><br>Caso Núm.:<br>CA2023CV00484<br><br>Sobre:<br>Impericia Médica<br><br><br><br>************************ |
| JANELIZ JIMÉNEZ CORTÉS, MARGARITA CORTÉS, DAVID JIMÉNEZ<br><br>Recurrida<br><br>v.<br><br>DOCTOR´S CENTER SAN FERNANDO DE LA CAROLINA, HOSPITAL DE CAROLINA; **DR. RAFAEL COUTO CUERVO**; SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR DR. RAFAEL COUTO CUERVO Y JANE DOE; JOHN DOE Y RICHARD ROE; CORPORACIONES X, Y & Z; COMPAÑÍAS ASEGURADORAS A, B y C<br><br>Peticionaria | TA2025CE00683 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala de CAROLINA<br><br>Caso Núm.:<br>CA2023CV00484<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

El 2 de octubre del año en curso, Janeliz Jiménez Cortés (en adelante, Jiménez Cortés o la parte apelante) compareció ante este Tribunal de Apelaciones por medio de la *Apelación* número **TA2025AP00396** y nos solicitó que revoquemos la *Sentencia Final* emitida el 3 de septiembre de 2025, por el Tribunal de Primera Instancia (en adelante, TPI), Sala Superior de Carolina. Por virtud del aludido dictamen, el foro primario declaró Ha Lugar las solicitudes de sentencia sumaria promovidas por el Dr. Rafael Couto Cuervo (Dr. Couto) y Doctors' Center Hospital, San Fernando de la Carolina, L.L.C. (D.C. Hospital) (en adelante, los apelados) y, como resultado, desestimó con perjuicio la *Demanda* de daños y perjuicios instada por Jiménez Cortés contra el Dr. Couto y D.C. Hospital.

Por su parte, tras oportunamente haber solicitado la reconsideración de la denegatoria de la partida de honorarios respecto al perito Dr. Suárez, y habiéndose resuelto la misma mediante *Resolución*, notificada el 3 de octubre de 2025, el Dr. Couto sometió el recurso de *Certiorari Civil* número **TA2025CE00683**, el 28 de octubre de 2025. Allí, nos solicitó la revisión judicial de dicha decisión y que se ordenara la concesión de tales honorarios.

El 30 de octubre de 2025, por estar estrechamente relacionados y en aras de la economía procesal, ordenamos la consolidación de los recursos de epígrafe. Así pues, con el beneficio de la postura de todas las partes en ambos recursos y conforme a la evidencia presentada, por las razones que más adelante explicamos, **confirmamos** el dictamen apelado en el recurso **TA2025AP00396.** De otra parte, **denegamos** expedir el auto solicitado en el recurso de *certiorari*, **TA2025CE00683**.

**-I-**

El pleito de epígrafe comenzó con la presentación de una *Demanda* por parte de Jiménez Cortés, Margarita Cortés y David Jiménez por daños y perjuicios.[1] Entre otras cosas, allí se alegó que el 9 de febrero de 2021, Jiménez Cortés fue sometida a una cirugía de Hypomastia (aumento de senos) en el D.C. Hospital de Carolina bajo la atención del Dr. Couto, cirujano plástico. Igualmente, se indicó que al momento de la cirugía Jiménez Cortés no padecía de ninguna condición ni problema de piernas o rodillas pero que, al despertar de la cirugía, comenzó a sentir un dolor fuerte en sus rodillas y, aun así, fue dada de alta. También, se aseveró que, desde ese día, Jiménez Cortés no pudo caminar nuevamente hasta pasadas varias semanas por el dolor en las piernas, pero más en la rodilla izquierda que en la derecha.

La apelante relató que, tras la operación, durante sus visitas de seguimiento le informó al Dr. Couto de sus dolencias y a esos efectos, el Dr. Couto la refirió a un ortopeda para evaluación. Conforme allí, luego de varios MRI y un CT, se reveló lo siguiente: dos (2) fracturas en la rodilla izquierda, ligamento estirado y contusión; microfractura en la rodilla derecha, entre otros diagnósticos.[2] Según los demandantes, hasta ese día, ni D.C. Hospital, ni el Dr. Couto han podido brindar una explicación de qué ocasionó sus severos daños.

---

[1] SUMAC-TPI, Entrada Núm. 1. La reclamación se presentó el 17 de febrero de 2023, al amparo de los Artículos 1536, 1539, 1540 y 1541 del Código Civil de Puerto Rico, Ley Núm. 55-2020, 31 LPRA secs. 10801, 10803-6.

[2] Según se alega en la demanda: (a) los diagnósticos del *MRI* del 16 de febrero de 2021 fueron: "Contusion of left knee, Knee joint effusion, Lateral colateral ligament partial tear y ACL (anterior cruciate ligament) partial tear"; (b) otro *MRI* del 24 de febrero de 2021 de la rodilla derecha reveló: "Bone marrow edema with microfractures of the medial and lateral tibial plateaus with bone marrow edema at the attachment of the anterior cruciate ligament without retraction… mild tendinopathy involving the quadriceps tendon insertion into the patella with edema of the infrapatellar fat pad and small amount of fluid at suprapatellar compartment without chondromalacia; (c) un estudio del 3 de marzo de 2021 reveló: "Nondepressed tibial plateau fracture most conspicuous medially. Small avulsion fractures posteriorly at the tibia and fibula as detailed above"; (d) el ortopeda Dr. Trautmann, le informó que tenía dos (2) fracturas en la rodilla izquierda, ligamento estirado y contusión. A su vez, la rodilla derecha reflejaba microfractura; (e) los hallazgos hechos por la fisiatra, Dra. Nancy Alicea, fueron: "bilateral knee tenosinovitis; bilateral knee plateau fractures". *Íd.*

Jiménez Cortés sostuvo que al momento de la cirugía no presentaba daños en la rodilla y la única explicación razonable es que mientras estaba anestesiada, antes, durante o después de la cirugía, y bajo el completo control de los demandados, sufrió una caída o resultó lesionada. Por ello, arguyó que el Dr. Couto, quien fue el médico que llevó a cabo la hypomastia, le responde por los daños sufridos a sus piernas durante la cirugía. Asimismo, alegó que D.C. Hospital respondía por los actos y omisiones de su personal médico, técnico y/o de enfermería pues todo apuntaba a que, durante su estadía, bajo la supervisión y el control de su personal, sufrió el trauma en sus piernas, hechos que se le han ocultado y constituyen conducta temeraria.

Ante ese cuadro, Jiménez Cortés alegó que, durante su recuperación, tuvo que utilizar andadores y ayuda para casi cualquier tipo de actividad cotidiana; que recibió no menos de cuarenta (40) terapias físicas, estando inmovilizada de su pierna izquierda por no menos de seis (6) semanas y que sufrió angustias mentales. Por todo esto, reclamó un resarcimiento ascendente a una suma no menor de doscientos mil dólares ($200,000.00) y cinco mil dólares ($5,000.00) por gastos médicos especiales.

El 12 y 20 de junio de 2023, respectivamente, el D.C. Hospital y el Dr. Couto contestaron la *Demanda*. Ambas partes negaron negligencia o responsabilidad por cualquier daño sufrido por Jiménez Cortés.[3] Mientras, el 11 de agosto de 2023, los co-demandantes Margarita Cortés y David Jiménez, presentaron un desistimiento voluntario con perjuicio en todas sus causas de acción instadas, el cual fue acogido por el TPI, dictando sentencia parcial el 11 de agosto de 2023.

Tras varios trámites procesales relacionados con el descubrimiento de prueba, el 21 de julio de 2025, el Dr. Couto presentó *Moción de Sentencia Sumaria*. Allí, propuso que no existía controversia en cuanto a catorce (14)

---

[3] *Id.*, Entradas Núm. 9 y 11.

hechos. Basándose en estos, alegó que la *Demanda* debía ser desestimada con perjuicio pues era un hecho incontrovertido que no se apartó de la mejor práctica de la medicina. Particularmente, estableció que Jiménez Cortés carecía de prueba mediante la cual pudiera probar todos los elementos de su causa de acción y rebatir así la presunción de corrección de su intervención. El Dr. Couto expuso que este hecho surgió de la deposición que se le tomó en el caso a la perita de Jiménez Cortés.[4]

Por su parte, el 22 de julio de 2022, el codemandado D.C. Hospital presentó una *Solicitud de Sentencia Sumaria*. En su escrito también sostuvo que no había controversia en cuanto a que la parte demandante carecía de evidencia para probar los elementos materiales y esenciales de su causa de acción —negligencia, el daño y el nexo causal— por lo que procedía desestimar con perjuicio la *Demanda*.[5] Con dicho propósito, expuso que no existía controversia sobre veinticinco (25) hechos.

Jiménez Cortés se opuso a ambas mociones de sentencias sumarias.[6] A tales efectos, adujo que estableció que llegó a la cirugía en perfectas condiciones, más salió con fracturas en ambas rodillas. Ante este hecho, alegó que el peso de la prueba se transfería a los apelados, quienes tuvieron el control de su persona mientras estuvo sedada y también ostentan control de los récords médicos. Así, argumentó que existía controversia material:[7]

---

[4] *Íd.*, Entrada Núm. 41.

[5] *Id.*, Entrada Núm. 44. En apoyo a su reclamo, D.C. Hospital acompañó su solicitud con los siguientes documentos: certificado del récord de la paciente de D.C. Hospital; transcripción de la deposición del Dr. Couto, págs. 11, 16-20, 43-5; transcripción de la deposición de Jiménez Cortés, págs. 27-8, 42, 52-3, 106-7, 115; nota de enfermería en récord médico de D.C. Hospital; transcripción de la deposición de la Dra. Mieses Llavat, págs. 32-5, 105, 113-4;

[6] *Íd.*, Entradas Núm. 56 y 58.

[7] Para sustentar su postura, sometió y citó: la Deposición Jiménez Cortés. *Íd.*, Entrada 56, Exhibit 1, pág. 42 y 68. Véase, además, Entrada 58, Exhibit 1, pág. 104; la Deposición del Dr. Couto. *Íd.*, Entrada 56, Exhibit 3. Además, hizo mención del informe pericial de la Dra. Mieses, en particular: "Apparently, there are no intervening dramatic events to her knees, therefore it is beyond reasonable certainty that the knee injuries occurred while she was sedated and under supervision of the hospital institution where breast augmentation surgery was performed". *Íd.*, Entrada 58, Exhibit 2, pág. 5. También, mencionó las siguientes declaraciones de la Dra. Mieses en su deposición: "[M]i opinión es que después que a ella la sedan, ocurrió algún evento que ocasionó que, que ocurrieran esos daños. Que yo no le sabría decir, porque no hay documentación en ningún sitio de, que, que sea explicativa para decirnos donde fue que ocurrieron los hechos… Pero si sabemos que fue

1. sobre lo ocurrido durante dicha cirugía, ya sea pre-operatoriamente o pos-operatoriamente, mientras Jiménez Cortés se encontraba anestesiada y bajo el control del Dr. Couto y el D.C. Hospital, que resultó en las fracturas que sufrió en ambas piernas. Esto, cuando surge claramente del récord médico que mientras Jiménez Cortés se encontraba en *recovery* comenzó a quejarse de un dolor en una de sus piernas;

2. sobre la referencia a una nota de enfermería que documenta que en efecto Jiménez Cortés se quejó de dolor en las piernas mientras se encontraba en *recovery*;

3. sobre que Jiménez Cortés no puede precisar ningún acto de impericia médica, ni que se cayó durante la operación y de que no hubo eventualidades durante la operación, la prueba demuestra lo contrario; y

4. sobre la conclusión del Dr. Suárez Castro, perito anunciado por el Dr. Couto, en su informe pericial, en donde determina que la intervención médica del Dr. Couto fue correcta y sin problemas, por lo que no hubo desviación del estándar de cuidado, pues dicho informe no debía ser considerado.

Así las cosas, el 3 de septiembre de 2025, notificada en autos el día 4, el foro recurrido emitió *Sentencia* a favor de la parte apelada mediante la cual dispuso que no existía controversia sobre los siguientes hechos:

1. El 7 de enero de 2021, Janeliz Jiménez Cortés acudió a la oficina privada del Dr. Rafael Couto porque estaba interesada en un procedimiento de implante para aumento de senos de copa A a copa B.

2. El 11 de enero de 2021, Janeliz Jiménez Cortés, tuvo su segunda visita con el Dr. Rafael Couto Cuervo.

3. El 16 de enero de 2021, Janeliz Jiménez Cortés, tuvo su tercera visita con el Dr. Rafael Couto Cuervo porque tenía interés en que el aumento a sus senos fuera mayor a lo inicialmente dialogado.

4. El 29 de enero de 2021, Janeliz Jiménez Cortés acudió a su cita preoperatoria con el Dr. Rafael Couto Cuervo, en la que firmó su consentimiento informado, se le entregó los documentos de preadmisión, órdenes médicas y otros documentos pertinentes.

5. El 9 de febrero de 2021, el Dr. Rafael Couto Cuervo realizó la operación según consentido por Janeliz Jiménez Cortés. La cirugía de aumento de senos se llevó a cabo en el Doctors Center Hospital, San Fernando de Carolina, LLC.

6. Al momento de llevarla a Sala de operaciones Janeliz Jiménez Cortés estaba despierta.

7. Janeliz Jiménez Cortés estaba despierta cuando se trasladó a la cama quirúrgica.

---

después de que ella fue sedada… y antes de salir del hospital, porque ella se estaba quejando cuando fue a salir del hospital…". (Énfasis nuestro) *Íd.*, Exhibit 3, pág., 109.

8. La única parte del cuerpo de la demandante que se intervino durante la cirugía fue el área de los senos.

9. Al finalizar la cirugía y estando el Dr. Rafael Couto Cuervo presente se trasladó a la paciente de la mesa quirúrgica a la camilla.

10. Al terminar la cirugía se llevó a la paciente al área de recuperación post operatorio.

11. El Dr. Couto estuvo presente al llevar a la paciente al área de recuperación.

12. En el área de recuperación la demandante le dijo a la enfermera que le dolía la rodilla derecha y que esa rodilla le solía doler de vez en cuando pero ese día le dolía más.

13. La operación de Janeliz Jiménez Cortés fue una cirugía electiva y no una cirugía de emergencia. Su procedimiento quirúrgico fue programado y coordinado con el cirujano plástico que ella seleccionó.

14. El 13 de febrero de 2021, Janeliz Jiménez Cortés, acudió a su cita de seguimiento postoperatoria con el Dr. Rafael Couto Cuervo y le informa que desarrolló dolor en su rodilla izquierda.

15. El 13 de febrero de 2021, el Dr. Rafael Couto Cuervo le recomendó a Janeliz Jiménez Cortés acudir donde el Dr. Rodríguez, ortopeda.

16. La encomienda de la Dra. Priscilla Mieses Llavat fue evaluar la paciente para saber si había algún daño y la causalidad.

17. La Dra. Priscilla Mieses, perito de la parte demandante únicamente opinó que algo sucedió mientras la paciente estaba en el hospital por que la demandante entró sin dolor y salió con dolor, pero no identificó un tratamiento mal dado.

18. El 23 de agosto de 2024, se depuso a la Dra. Priscilla Mieses Llavat para que expandiera su opinión pericial.

19. Janeliz Jiménez Cortés fue dada de alta el 9 de febrero de 2021.

20. La operación de aumento de seno realizada a Janeliz Jiménez Cortés se realizó según planificada y no tuvo complicaciones.

21. La Dra. Priscilla Mieses Llavat, perito de la parte demandante, admitió bajo juramento que no puede determinar cuál fue la causa del trauma o lesión en las rodillas.

22. La Dra. Priscilla Mieses Llavat, perito de la parte demandante declaró que lo único que podía decir es que la paciente llegó sin dolor en la rodilla y que no había razón que explicara lo ocurrido.

23. La Dra. Priscilla Mieses Llavat no identificó en su informe pericial ni en su deposición cual fue la desviación del estándar de la buena práctica de la medicina en la que incurrió el Dr. Rafael Couto Cuervo y el hospital.

En virtud de estos hechos, el foro primario resolvió que Jiménez Cortés no contaba con prueba para demostrar la negligencia del Dr. Couto, ni la de D.C. Hospital. Por tal motivo determinó que no existían elementos subjetivos de intención, negligencia, o propósitos mentales de credibilidad presentes que impidieran disponer del caso sumariamente, según dispone la Regla 36 de Procedimiento Civil. En consecuencia, declaró Ha Lugar las mociones de sentencia sumaria presentadas por el Dr. Couto y D.C. Hospital y, como resultado, desestimó con perjuicio la *Demanda* de autos.[8]

En desacuerdo, el 2 de octubre de 2025, Jiménez Cortés sometió el recurso de epígrafe número **TA2025AP00396** imputándole al TPI equivocarse al:

- permitir y considerar la prueba pericial sorpresivamente presentada y anejada por el codemandado Dr. Rafael Couto en apoyo de su moción de sentencia sumaria, sin darle siquiera a la parte demandante la oportunidad de realizar el correspondiente descubrimiento de prueba ni resolver la solicitud de exclusión presentada al respecto;

- desestimar sumariamente la demanda en cuanto a ambos codemandados, mediante una sentencia sumaria por alegada insuficiencia de prueba, a pesar de que la prueba circunstancial presentada evidenciaba un evento traumático ocurrido mientras la demandante estuvo anestesiada y bajo el control y la supervisión absoluta de los codemandados, pues la parte demandante demostró la existencia de genuinas controversias de hechos materiales que impedían la concesión de este mecanismo extraordinario; y al

- dictar sentencia sumariamente aplicando la presunción de corrección propia de los casos de impericia médica y, por ende, el estándar probatorio incorrecto, cuando lo planteado era un reclamo de daños y perjuicios por un evento traumático ocurrido mientras la demandante estuvo anestesiada y bajo el control absoluto de los codemandados, susceptible de probarse mediante prueba circunstancial, testifical y pericial.[9]

A esos efectos, la apelante nos pide que se devuelva el caso al Tribunal de Primera Instancia para la continuación de los procedimientos correspondientes, incluyendo la celebración de un juicio en su fondo, a fin de que se garantice la aplicación correcta de la Regla 36, la salvaguarda del

---

[8] *Íd.*, Entrada Núm. 61.
[9] SUMAC TA, Entrada Núm. 1.

debido proceso de ley, y la adjudicación justa de las reclamaciones conforme a la prueba y al derecho aplicable.

Por su parte, tras emitirse el dictamen, el Dr. Couto sometió una *Moción sobre costas al amparo de la Regla 44.*[10] En esta, solicitó que el Tribunal ordenase el pago de los gastos incurridos necesariamente en la tramitación de este pleito. No obstante, renunció a la solicitud de que se ordenase el pago de honorarios de abogado, sujeto a que Jiménez Cortés no apelase la sentencia. El 16 de septiembre de 2025, Jiménez Cortés presentó una *Oposición a memorando de costas del codemandado Dr. Couto*, en la que se opuso a la concesión de la cuantía solicitada por el perito Dr. Suárez, puesto que el informe pericial se notificó con posterioridad a la conclusión del descubrimiento de prueba y con posterioridad a la vista de conferencia con antelación al juicio celebrada el 3 de abril de 2025.[11] El 17 de septiembre de 2025, el TPI emitió *Resolución* en la que concedió las partidas solicitadas, aunque, denegó la petición de honorarios al perito del Dr. Couto Cuervo por haber sido anunciada y notificada tardíamente.[12]

Así las cosas, el 25 de septiembre de 2025, el Dr. Couto presentó *Moción Aclaratoria y de Reconsideración* en la cual adujo que, sí anunció oportunamente a su perito, el Dr. Suárez. Añadió, que dicha información siempre fue conocida por la parte demandante, así como que su testimonio sería utilizado en el juicio de ser necesario. Además, alegó que la parte demandante impidió el curso normal del descubrimiento de prueba. Por su parte, Jiménez Cortés presentó *Oposición a Moción Aclaratoria y de Reconsideración*[13] en la cual adujo que, el informe pericial del Dr. Suárez no fue notificado hasta que se anejó con la sentencia sumaria presentada el 21 de julio de 2025, por lo que se trataba de prueba sorpresiva y tardía ya que

---

[10] SUMAC TPI, Entrada Núm. 63.
[11] *Íd.*, Entrada Núm. 66.
[12] *Íd.*, Entrada Núm. 68.
[13] *Íd.*, Entrada Núm. 73.

el descubrimiento de prueba había terminado. En consecuencia, adujo que no se le permitió llevar a cabo descubrimiento en cuanto a dicho perito, y el TPI nunca consideró su *Oposición a Moción Informativa Anunciando Perito* antes de desestimar la demanda.

Así las cosas, el 1 de octubre de 2025, notificada el día 3, el TPI emitió *Resolución* en la que declaró No Ha Lugar la *Moción Aclaratoria y de Reconsideración* presentada por el Dr. Couto.[14] Allí determinó que, aunque el Dr. Suárez sí fue incluido en el Informe de Conferencia con Antelación al Juicio, la única prueba documental anunciada por el Dr. Suárez Castro fue: (1) CV del Dr. Rafael Couto Cuervo, (2) Récord del Dr. Rafael Couto Cuervo, (3) Póliza del Dr. Rafael Couto Cuervo, y (4) CV del Dr. José Suárez Castro. El TPI razonó que la primera vez que se anunció el Informe pericial fue cuando se presentó la moción de sentencia sumaria. Insatisfecho, el Dr. Couto instó el auto de *certiorari* **TA2025CE00683** en el que le imputa al TPI abuso de su discreción al:

- denegar las costas asociadas al perito anunciado oportunamente por la parte recurrente ya que su informe no pudo completarse antes del cierre del descubrimiento de prueba por las acciones dilatorias efectuadas por la parte recurrida.

Atendido el recurso **TA2025AP00396**, el 3 de octubre de 2025, notificada el día 6, emitimos una *Resolución* concediéndole a las partes apeladas el término dispuesto por el Reglamento de este Tribunal de Apelaciones para que presentara su oposición al recurso.

El 27 de octubre de 2025, el Dr. Couto presentó *Alegato en Oposición a Apelación*.[15] Allí, planteó que el foro inferior actuó correctamente al dictar sentencia sumaria y desestimar la *Demanda*, tras concluir, conforme al expediente, que hay total ausencia de prueba para establecer los elementos de la causa de acción presentada en daños y perjuicios en su modalidad de impericia médica. En segundo lugar, expone que según surge de la

---

[14] *Íd*., Entrada Núm. 77.
[15] *Íd*., Entrada Núm. 6.

sentencia recurrida, el TPI tampoco consideró el informe de su perito, el Dr. Suárez, al desestimar la demanda. Además, argumentó que la perita de Jiménez Cortés, la Dra. Mieses, admitió que no pudo identificar una desviación del estándar de cuidado, no pudo identificar un evento traumático y tampoco pudo establecer una relación causal entre los daños y la intervención del doctor Couto.[16] Por último, aduce que la prueba que ofrece la parte apelante es insuficiente para probar su caso y procede en derecho la desestimación.

Tras los trámites procesales de rigor, sobre ambos recursos las partes sometieron sus respectivas posiciones. Siendo ello así, damos por sometido el asunto y procedemos a resolver.

**-II-**

*-A-*

El mecanismo procesal de la sentencia sumaria establecido por la Regla 36 de Procedimiento Civil, se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, resulta innecesaria la celebración de un juicio en su fondo. *Negrón Castro y otros v. Soler Bernardini, et al.*, 2025 TSPR 96, 216 DPR ___, al citar a *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024). Su propósito, es que los pleitos civiles se resuelvan de forma justa, rápida y económica. *Íd.,* al mencionar a *SLG Fernández-Bernal v. RAD-MAN, et al.,* 208 DPR 310, 334-335 (2021).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, establece el contenido y los requisitos de forma que deben observarse, tanto en la solicitud de sentencia sumaria presentada por la parte promovente, como en la oposición que pueda presentar la parte promovida. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43 (2020). Así pues, conforme el inciso (e) de la aludida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y

---

[16] Véase, SUMAC TPI, Entrada 41, Exhibit 4, págs. 34-5.

cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente.[17] Para que un tribunal dicte sentencia sumaria a favor del promovente, ésta deberá, además, justificarse por el derecho aplicable. *CSM v. ELA*, 2025 TSPR 78, 216 DPR _____, al mencionar a *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

Procede dictar sentencia sumaria si de los documentos sometidos ante la consideración del tribunal surge que no existe controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia estricta de derecho.[18] Por el contrario, no procederá una moción de sentencia sumaria cuando (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Íd.*, al citar a *SLG Fernández-Bernal v. RAD-MAN, et al.,* a la págs. 335-336.

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos estamos llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas por la Regla 36.3 de Procedimiento Civil, *supra.* Claro está, debemos recordar que no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI, ni adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. *Meléndez González et al. v. M. Cuebas, supra,* pág. 118. Cabe destacar que, en el caso en que no existan hechos materiales en controversia, este Foro procederá a revisar *de novo* si el TPI aplicó

---

[17] 32 LPRA Ap. V, R. 36.3(e).

[18] *Negrón Castro y otros v. Soler Bernardini, et al., supra,* al citar la Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V R 36.3(e); a *Rodríguez García v. UCA,* 200 DPR 929, 941 (2018); y a *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

correctamente el Derecho. *Negrón Castro y otros v. Soler Bernardini, et al.,* *supra,* al mencionar a *Fernández-Bernal v. RAD-MAN et al., supra*, pág. 338 y *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

*-B-*

Conforme a estos principios, junto a la sentencia sumaria tradicional, existe una modalidad de solicitud de sentencia sumaria que se emplea cuando el promovente alega que la parte contraria no cuenta con evidencia suficiente para prevalecer en el juicio. El Tribunal Supremo adoptó esta modalidad al establecer que, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar una moción de sentencia sumaria en la que alegue que la otra parte no cuenta con evidencia suficiente para, al menos, probar un elemento esencial e indispensable de su reclamación. *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 731-735 (1994). Es decir, esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso y requiere del promovente establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación, y (3) como cuestión de derecho, procede la desestimación de la reclamación. *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016) al citar a *Ramos Pérez v. Univisión P.R., Inc.*, 178 DPR 200, 217-8 (2010).

El promovente de una moción de sentencia sumaria por insuficiencia de prueba tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado. Ello significa que tiene que poner en posición al tribunal para evaluar la adecuacidad del descubrimiento realizado. *Medina v. M.S. & D. Química P.R., Inc., supra*, pág. 733. En ese sentido, no se considerará adecuado el descubrimiento de prueba cuando de un análisis de los documentos se entienda que la parte

promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener prueba admisible. *Íd*.

Por tanto, luego de haber transcurrido un tiempo adecuado para el descubrimiento de prueba, la parte promovente puede demostrar que del récord del tribunal surge que la parte promovida no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre la cual tiene el peso de la prueba. En ese caso, procede que se dicte sentencia sumaria para desestimar la demanda. Ahora, si existiera duda sobre si hay prueba suficiente o no en torno a alguna controversia de hecho relevante, los tribunales deben denegar la solicitud de sentencia sumaria por ese fundamento. *Medina v. M.S. & D. Química P.R., Inc.*, *supra*, pág. 734.

Así pues, para disponer del pleito mediante una solicitud de sentencia sumaria por ausencia de prueba es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba adecuado y debe quedar demostrado que, una vez este concluye, la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción. *Rodríguez Méndez v. Laser Eye*, *supra*, pág. 787. Por otro lado, al haberse realizado un descubrimiento de prueba adecuado, la parte promovida deberá presentar una oposición a la solicitud de sentencia sumaria debidamente fundamentada. Esto es, no puede evadir la moción del promovente bajo el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su "día en corte". *Íd*.

Así reconocido, para poder derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de prueba, el promovido puede: (1) presentar en su oposición prueba admisible en evidencia, o prueba que pueda convertirse en admisible, o que dé lugar a prueba admisible, que demuestre la existencia de evidencia para probar los elementos esenciales de su caso; (2) exponer que hay prueba en el récord

que puede convertirse en admisible que derrotaría la contención de insuficiencia; (3) alegar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o, (4) que, por su naturaleza, no conviene que el caso se resuelva por el mecanismo de sentencia sumaria. *Medina v. M.S. & D. Química P.R., Inc.,* *supra*, pág. 734.

-C-

El Art. 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801, establece: "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". Asimismo, el Art. 1158 del Código Civil, *supra*, establece que: "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados". 31 LPRA sec. 9303. En materia de daños y perjuicios para que prospere una reclamación bajo el citado Artículo, tiene que darse la concurrencia de tres elementos básicos a saber: (1) un acto u omisión culposo o negligente del demandado; (2) la presencia de un daño físico o emocional en el demandante y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Weber Carillo v. ELA*, 190 DPR 688 (2014); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

-D-

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una

conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314, 335 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al.*, *supra,* a la pág. 207-208. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[19] *BPPR v. SLG Gómez-López*, *supra,* pág. 337. Estos criterios, pautan el ejercicio sabio y

---

[19] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Establecida la norma jurídica aplicable a los recursos consolidados, procedemos a atender los errores que en estos se señalan.

**-III-**

Antes de explicar nuestra decisión, según nos ordena la normativa jurídica aplicable a las solicitudes de sentencia sumaria, hemos evaluado si las solicitudes de sentencia sumaria sometidas, tanto por el Dr. Couto como por D.C. Hospital, cumplen con los requisitos de forma que exige la Regla 36 de Procedimiento Civil, *supra.* Efectuado el examen, concluimos que así fue. Ambos escritos contienen una breve exposición de las alegaciones de las partes, identifican los asuntos litigiosos y la causa de acción sobre la cual solicitan la sentencia sumaria, e incluyen una relación concisa, organizada y en párrafos separados de aquellos hechos esenciales y pertinentes sobre los que proponen no existe controversia. Sobre esto último, también hacen referencia a la evidencia admisible en la que descansan sus propuestas. Igualmente, las mociones de sentencia sumaria presentadas exponen las razones por las cuales las partes proponentes entienden deben dictarse sentencia en virtud del derecho aplicable que incluye y el remedio que se solicita. Similar conclusión alcanzamos en cuanto a la oposición que Jiménez Cortéz sometió frente a cada una de las mociones de sentencia sumaria.

Concluido el avalúo de las sentencias sumarias y respectivas oposiciones, entramos a evaluar los reclamos presentados en el caso de epígrafe por Jiménez Cortéz en el recurso **TA2025AP00396** y valorar si existían controversias de hechos medulares que impedían la resolución sumaria del pleito, así como determinar si la aplicación del derecho efectuada por el foro primario fue correcta.

La apelante plantea que, en efecto, hay hechos medulares controvertidos que impiden resolver sumariamente por lo que el dictamen apelado debe revocarse. Así pues, en primer lugar, asevera que el foro primario falló al adjudicar controversias basándose en un informe pericial que ni siquiera debió formar parte del récord, pues trataba de evidencia producida cuando el descubrimiento de prueba ya había finalizado.[20]

De otra parte, expone que el análisis de insuficiencia de prueba efectuado fue equivocado, pues el expediente contenía evidencia más que suficiente para sostener su reclamación. Específicamente, plantea que en el pleito de epígrafe no existía certeza sobre todos los hechos materiales, pues, según su perito, la única explicación razonable de los daños sufridos por ellos es que de alguna manera resultó seriamente lesionada mientras se encontraba bajo los efectos de la anestesia. Además, señala haber evidenciado mediante su declaración, que no padecía de condiciones previas en las piernas o rodillas; más salió del procedimiento con fracturas en ambas rodillas.

Por estas razones, aunque admite que ni ella ni su perito pueden precisar qué ocurrió, señala que ambas coinciden en que durante el periodo que estuvo bajo los efectos de la anestesia, debió ocurrir un acto traumático y torticero.[21] Entonces, al citar a Galán Cortés; *Responsabilidad Civil Médica*, 8va edición, págs. 422, 427, Aranzadi, nos invita a acoger la teoría del daño desproporcionado. Más aún, expone que la decisión apelada aplicó un estándar probatorio incorrecto, pues su reclamación no es una de impericia

---

[20] Más adelante haremos referencia específica a las razones detrás de la decisión apelada. Al hacerlo, podrá notarse que la desestimación decretada por el tribunal respondió a la insuficiencia de la prueba por parte de la apelante para probar su caso **una vez concluyó el descubrimiento de prueba y se sometió el *Informe Preliminar Entre Abogados para la Conferencia con Antelación al Juicio* por las partes.** Entiéndase pues, que la determinación apelada no descansó en, ni consideró el informe pericial del Dr. Suárez. Ante tal claro hecho, es innecesario atender directamente cualquier argumento traído en su apelación sobre este asunto.

[21] Así pues, tanto ante el TPI como en apelación, Jiménez Cortés, plantea que su perito, la Dra. Mieses, concluyó que las fracturas ocurrieron durante el periodo intraoperatorio o postoperatorio, por lo que, al ser un testimonio admisible, era suficiente para establecer un hecho material controvertido que impide conceder la sentencia sumaria.

médica, sino una de daños y perjuicios derivados de un evento traumático ocurrido mientras estaba bajo anestesia y bajo el control absoluto de los demandados. Expone pues, que probó que ingresó al hospital sin historial alguno de condiciones en las piernas o rodillas y que era razonable concluir, con certeza razonable, que las lesiones ocurrieron mientras se encontraba sedada y bajo la supervisión de la institución hospitalaria. Por esto, correspondía a los apelados demostrar que el evento traumático no ocurrió.

A los fines de atender estos argumentos hemos examinado minuciosamente el expediente ante nuestra consideración. Particularmente, las solicitudes de sentencia sumaria sometidas por el Dr. Couto y D.C. Hospital, la oposición que frente a estas presentó la apelante y la *Sentencia Final* dictada en el caso. Al revisar las solicitudes de sentencia sumaria, así como sus respectivas oposiciones, consideramos que la revisión que acontece en estas circunstancias como foro apelativo es una *de novo*. Efectuado tal ejercicio, juzgamos, al igual que hizo el foro primario, que no hay hechos esenciales en controversia.

Estamos contestes con las determinaciones de hechos no controvertidos enumeradas por el TPI en el dictamen apelado, reproducidas más arriba en nuestro recuento procesal del caso.[22] De la misma forma, y como también le pareció al TPI, a nuestro juicio no existen elementos subjetivos de intención, negligencia o propósitos mentales de credibilidad que hagan meritoria la celebración de una vista en su fondo y que, por consiguiente, impidan la resolución sumaria de las controversias.[23]

---

[22] Es importante mencionar que algunas de estas, descansan en propias admisiones de la apelante, mientras que el resto, en aquella evidencia documental que las partes sometieron en apoyo u oposición a la sentencia sumaria. O sea, que cada uno de los hechos que el foro primario determinó incontrovertidos, descansó en prueba contenida en el expediente judicial.

[23] La apelante reclama lo contrario. Así expone que aun cuando D.C. Hospital ostenta el control de la información pertinente, nunca ha reconocido la ocurrencia del evento traumático que según ella y su perito es probable ocurrió mientras fue operada. Sin embargo, más allá de oponerse bajo este entendido, ni frente al TPI ni ante nos ha especificado qué prueba concreta- directa o circunstancial- debe ser evaluada mediante la celebración de una vista en su fondo y no de forma sumaria.

A su vez, coincidimos con la apreciación del TPI en cuanto a que el récord está huérfano de documento alguno que establezca el evento, acto, incidente o situación que ocasionó los daños a las rodillas de la apelante.[24] Igual concordancia hallamos en cuanto a la falta de prueba anunciada por parte de la apelante que pueda establecer acto negligente alguno por parte del Dr. Couto o de D.C. Hospital, según decretada en la *Sentencia Final*. Inclusive, **aun evaluándose la reclamación de la apelante al amparo de una causa de acción en daños y perjuicios extracontractuales.** [25]

Similarmente, estamos de acuerdo con la decisión del TPI de no acoger el planteamiento de la apelante y presumir que el que llegara al hospital sin problemas en sus rodillas y saliera de la intervención quirúrgica con fracturas en ambas rodillas es porque algo ocurrió mientras se encontraba anestesiada.[26] Como correctamente citó el tribunal, en nuestra jurisdicción, la figura de negligencia no se presume y quien la alega debe probarla.[27]

---

[24] Nótese que es un hecho incontrovertido que del expediente médico de la apelante en el D.C. Hospital no se desprende la ocurrencia durante el proceso intra-operatorio o postoperatorio de evento traumático alguno.

[25] Véase, *Sentencia Final,* Entrada SUMAC-TPI Núm. 61, págs. 13-15. Es importante señalar que la explicación brindada por el foro primario al aplicar los hechos y el derecho a las circunstancias del pleito nos permite apreciar que el avalúo del tribunal de instancia no se limitó a aplicar el estándar probatorio de los casos de daños y perjuicios por impericia médica, sino que en la alternativa aplicó aquel que se exige en los casos de daños y perjuicios extracontractuales. Por tanto, y contrario a lo que señala en su tercer señalamiento de error, el estándar probatorio aplicado no se limitó a aquel sobre impericia médica. Ello significa que dicho error no fue cometido.

[26] Cabe señalar que coincidimos con lo consignado por D.C. Hospital en su *Alegato en Oposición a Apelación* en cuanto a que las alegaciones del evento traumático expuestas por la apelante no se pueden inferir sin la prueba mínima esencial. Ello así, pues en *Admor. F.S.E. v. Almacén Ramón Rosa,* 151 DPR 711 (2000), nuestro Tribunal Supremo desautorizó el uso de la doctrina *res ipsa loquitur* en nuestra jurisdicción. Lo anterior, sin menosprecio de lo consignado por el Juez Asociado señor Negrón García unido al Juez Asociado señor Corrada del Río en su voto concurrente en lo siguiente: "A fin de cuentas, la inequidad procesal en el ámbito probatorio de algunos casos de responsabilidad civil extracontractual llevó al desarrollo de la doctrina de *res ipsa loquitur* y su aplicación a casos diversos, desde accidentes por mantenimiento negligente del alumbrado eléctrico, *Rosado v. The Ponce Railway and Light Co.,* 18 DPR 609 (1912); *Cf. San Juan Light & Transit Co. v. Requena*, 224 U.S. 89 (1912), hasta reclamaciones por impericia médica, *Riley v. Rodríguez de Pacheco*, 119 DPR 762, 778-784 (1987); *Oliveros v. Abréu,* 101 DPR 209, 230 (1973). Subsiste en nuestro ánimo grandes reservas de prescindir de esta doctrina, la cual ha ido siempre de la mano como complemento a las reglas de evidencia en casos de inequidad probatoria circunstancial."

[27] *Id.,* al citar a *Vaquería Garrochales, Inc. v. A.P.P.R.,* 106 DPR 799, 803 (1978).

En fin, al igual que hizo el foro primario, concluimos que la apelante falló en presentar evidencia que permitiera al tribunal efectuar una determinación clara y específica sobre negligencia. Por consiguiente, y en efecto, **la apelante no anunció ni identificó prueba, documental o testifical mediante la cual pueda establecer los elementos de una causa de daños y perjuicios contra los apelados**. Pues bien, ante todo lo hasta aquí expuesto, resolvemos que en el presente caso no existía impedimento alguno en derecho para conceder las mociones de sentencia sumaria sometidas separadamente por los apelados y resolver el pleito sumariamente a su favor por ausencia de prueba. Por ello, confirmamos la *Sentencia Final* apelada en el recurso **TA2025AP00396**.

Habiéndose así resuelto, procede que atendamos los planteamientos que el Dr. Couto levanta en el recurso **TA2025CE00683**. En este, al discutir su único señalamiento de error, le imputó abuso de discreción al TPI al no concederle como parte de las costas los honorarios de su perito, el Dr. José Suárez Castro. En síntesis, arguye que en nuestro ordenamiento jurídico se conceden las costas incurridas en la tramitación del pleito a la parte a cuyo favor se resuelva el pleito. Señala que, en su análisis, el tribunal solo necesitó las declaraciones de la perita de la apelante y las declaraciones de los testigos de hechos. No obstante, incurrió en el gasto de la contratación de su prueba pericial, por lo que, al ser favorecido por la sentencia, procedía la concesión de estas costas. No tiene razón.

Sabido es que no todos los gastos del litigo son recobrables como costas. *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 116 (2023) y casos allí citados. Solo son recobrables los gastos necesarios y razonables para la tramitación del pleito, procedimiento o apelación que un litigante debe reembolsar a otro. *Id.* En cuanto a estas, la Regla 44.1(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(a), dispone que las costas que el tribunal podrá conceder son los **gastos incurridos necesariamente en la tramitación**

**de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.**

Tratándose de una determinación discrecional, su evaluación judicial está atada al abuso de discreción. Este abuso puede manifestarse de varias maneras en el ámbito judicial. Así, se incurre en ello, entre otras, cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-212 (1990).

Ninguno de los argumentos levantados por el Dr. Couto nos convencen de que la negativa del tribunal de concederle las costas por los honorarios del Dr. Suárez constituyera abuso de discreción. Por el contrario, basta con leer las órdenes dictadas en el caso sobre esta controversia para entender que el foro primario no concedió los honorarios del perito, pues el informe pericial que este preparó no se produjo como parte del descubrimiento de prueba, ni se incluyó como prueba documental del Dr. Couto en el *Informe Preliminar entre Abogados para la Conferencia con Antelación al Juicio*. O sea, se trataba de prueba tardíamente sometida.

Habida cuenta de ello, no identificamos presente alguno de aquellos factores enunciados en la Regla 40 de nuestro Reglamento para determinar la expedición del auto discrecional del *certiorari*. No nos parece que la decisión recurrida sea contraria a derecho, ni que en esta haya mediado prejuicio, parcialidad por parte del TPI, que la expedición del auto evite el

fracaso a la justicia, o cualquiera de los otros elementos mencionados por la Regla 40. Al ser ello así, merece nuestro respeto.

**-IV-**

Por las razones antes consignadas, **confirmamos** la *Sentencia Final* dictada en la causa de epígrafe por el Tribunal de Primera Instancia, Sala Superior de Carolina el 3 de septiembre de 2025, según notificada el día 4, apelada en el recurso **TA2025AP00396**.

De otra parte, resolvemos denegar expedir el auto solicitado en el recurso **TA2025CE00683**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones