Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| Liza M. Cabán h/n/c Optimus Property Solution<br><br>Recurrida<br><br>vs.<br><br>Alejandro Brito; BDG, LLC; Rotonda Homeowner's Association, Inc.; Compañía Aseguradora ABC, XYC<br><br>Peticionarios | TA2026CE00019 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: SJ2024CV04174<br><br>Sobre:<br><br>Incumplimiento de Contrato y Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de enero de 2026

Comparecen el Sr. Alejandro Brito, BDG LLC y Rotonda Homeowner's Association, Inc. (parte peticionaria, conjuntamente), quienes solicitan la revocación de la Resolución emitida el 7 de diciembre de 2025[1], por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el referido dictamen, el foro primario resolvió que existen hechos esenciales en controversia que impiden dictar sentencia sumaria.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, expedimos el auto de *Certiorari*, y confirmamos la Resolución recurrida, por los fundamentos que expondremos a continuación.

**I.**

El 20 de julio de 2024, la señora Liza Cabán (Sra. Cabán), quien hace negocios como Optimus Property Solution (OPS), instó

---

[1] Notificada el 8 de diciembre de 2025.

una Demanda Enmendada sobre incumplimiento contractual y daños y perjuicios en contra del Sr. Brito, BDG LLC (BDG) y Rotonda Homeowner's Association, Inc. (RHAI). En síntesis, la recurrida alegó que el 19 de octubre de 2021, las partes suscribieron el Contrato de Administración, Contabilidad y Mantenimiento (Contrato de Administración) con RHAI. Detalló, también que, el Sr. Brito, presidente de BDG, le solicitó su servicio en cuatro proyectos adicionales: (1) Finca Elena, (2) Finca Elena Original, (3) Belmont y (4) Bellair. Sin embargo, adujo que, la parte peticionaria se negó intencionalmente a cumplir con las prestaciones acordadas. En vista de ello, peticionó $125,000.00, por la expectativa generada por el negocio jurídico.

Ante tales alegaciones, el 9 de septiembre de 2024, la parte peticionaria presentó su Contestación a la Demanda, en la cual solicitó la desestimación de la reclamación instada en su contra. Sostuvo que la Sra. Cabán, quien carece de legitimación activa, presentó una demanda que no justifica la concesión de un remedio. Contrario a lo manifestado por esta, enfatizó que ha cumplido sus obligaciones contractuales, por lo que, no adeuda la cantidad reclamada.

Tras una serie de incidencias procesales, el 22 de agosto de 2025, la parte peticionaria radicó una Moción de Sentencia Sumaria en la cual requirió la desestimación del reclamo.[2] En esencia, arguyó que la Sra. Cabán instó la Demanda en su carácter personal, mas no posee legitimación activa a tales efectos. Explicó que, la OPS es la entidad corporativa que acordó proveer los servicios de administración. Por consiguiente, argumentó que el Sr. Brito y BDG no forman parte del arreglo contractual. Especificó, además, que no adeudan la cantidad reclamada, puesto

---

[2] A esta moción adjuntó los siguientes documentos: (1) el Certificado de Incorporación de la Corporación Profesional, (2) el Contrato de Servicios de Administración, Contabilidad y Mantenimiento, y (3) la Transcripción de Deposición.

que el contrato "nunca comenzó".[3]  A su vez, señaló que la causa de acción en daños y perjuicios está prescrita.

Por su parte, el 24 de septiembre de 2025, la Sra. Cabán interpuso su Moción en Oposición a la Sentencia Sumaria.[4]  En esta, expuso que OPS era una corporación destinada al ofrecimiento de servicios de administración.  Precisó que dicha compañía operaba con un nombre comercial, pero sin separación jurídica de ella.  Por otro lado, alegó que la parte peticionaria impidió que el contrato se ejecutara, a pesar de que se generó una expectativa de ingresos.  Asimismo, puntualizó que el Sr. Brito actuaba como representante de BDG. Igualmente, resaltó que existen controversias sustanciales en torno al contrato de servicios relativo a: (1) Finca Elena, (2) Finca Elena Original, (3) Belmont y (4) Bellair

Luego de examinar sus argumentos, el TPI emitió una Resolución el 7 de diciembre de 2025, notificada al día siguiente, mediante la cual declaró No Ha Lugar la Moción de Sentencia Sumaria.  Consecutivamente, formuló las siguientes determinaciones de hechos esenciales que identificó en controversia:

> *1) Si al momento de la otorgación del contrato del 19 de octubre de 2021, OPS era una corporación debidamente autorizada e incorporada para hacer negocios en Puerto Rico con personalidad jurídica separada de la demandante o si era una extensión de la señora Cabán al ser presuntamente un DBA o nombre comercial.*
>
> *2) La intención de la parte demandante y RHAI al suscribir el contrato del 19 de octubre de 2021.*
> *3) La interpretación y el alcance de los términos del contrato del 19 de octubre de 2021.*
>
> *4) Si las negociaciones contractuales con relación al contrato del 19 de octubre de 2021 se llevaron a cabo en un plano personal y directo con la demandante o si eran en representación exclusiva de una entidad corporativa independiente.*

---

[3] Entrada 42 del Sistema Unificado de Manejo y Administración de Casos, a la pág. 12.
[4] A esta moción adjuntó una documentación correspondiente a unas deposiciones efectuadas a la Sra. Cabán y al Sr. Brito.

*5) Si la parte demandada generó expectativas a la demandante en cuanto a efectividad, inicio inmediato, transición y ejecución del contrato otorgado el 19 de octubre de 2021*

*6) Si la parte demandada impidió que el contrato del 19 de octubre de 2021 fuese efectivo.*

*7) Si existió un contrato verbal adicional al contrato otorgado el 19 de octubre de 2021 en el cual la parte demandada ofreció a la demandante la administración de las comunidades de Finca Elena Original, Finca Elena, Belmont y Bellair.*

*8) Si la parte demandada, como parte del alegado contrato verbal suscrito con la demandante, ofreció los detalles y discutió los proyectos de las comunidades de Finca Elena Original, Finca Elena, Belmont y Bellair.*

*9) Si el señor Brito generó promesas en cuanto al presunto contrato verbal alegadamente suscrito con la parte demandante y, de haberse generado, si tales promesas fueron extensivas tanto a BDG como a RHAI.*

*10) La intención de las partes al suscribir el alegado contrato verbal, así como su alcances e interpretación.*

*11) El incumplimiento de las partes en relación a los contratos objeto de la demanda, si alguno.*

*12) Los daños, si alguno, y su valoración.*[5]

De conformidad con lo anterior, el foro primario razonó que existen elementos subjetivos de credibilidad e intención que impiden dictar sentencia sumaria. Precisó, además, que tiene que evaluar si se configuró un contrato verbal relacionado con la administración de las urbanizaciones (1) Finca Elena Original, (2) Finca Elena, (3) Belmont y (4) Bellair. Sobre el argumento de prescripción, concluyó que la parte recurrida incoó oportunamente su pleito, toda vez que tenía hasta el 19 de octubre de 2025 para reclamar los daños derivados del incumplimiento contractual.

Inconforme, el 7 de enero de 2026, la parte peticionaria recurrió ante este Tribunal de Apelaciones mediante un recurso de *Certiorari*, en el cual esbozó los siguientes señalamientos de error:

---

[5] Entrada 51 del SUMAC TPI, a las págs. 6-7.

*Primer error:*

*Erró el TPI al determinar que existen hechos materiales que impiden dictar sentencia sumaria.*

*Segundo error:*

*Erró y abusó de su discreción el TPI al excluir de su resolución hechos materiales que no fueron controvertidos por la demandante.*

*Tercer error:*

*Erró el TPI al determinar que no procede desestimar la demanda por falta de legitimación activa de la demandante.*

*Cuarto error:*

*Erró el TPI al determinar que existe controversia sobre si RHAI adeuda alguna cantidad bajo el contrato de rotonda.*

*Quinto error:*

*Erró el TPI al determinar que existe controversia sobre si se configuró un contrato verbal en relación con "Finca Elena original, finca Elena, Belmont y Bellair".*

*Sexto error:*

*Erró el TPI al denegar la moción de sentencia sumaria en cuanto BDG LLC y el Sr. Brito.*

Sometido su recurso, 14 de enero de 2026, emitimos una Resolución, en la cual concedimos a la parte recurrida hasta el 26 de enero de 2026 para exponer su posición. En cumplimiento, el 23 de enero de 2026, la Sra. Liza Cabán radicó su Oposición a *Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.**

El auto *Certiorari* es un recurso extraordinario, mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994, 1004 (2021); *800*

*Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491. La característica distintiva de recurso se asienta en la discreción encomendada al tribunal revisor, para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

En aras de orientar la discreción judicial, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita aquellas circunstancias que permiten la intervención interlocutoria de este Tribunal de Apelaciones para revisar ciertas resoluciones, entre ellas, **la denegatoria de una moción de carácter dispositivo**. Nuestra autoridad se activa de mediar alguna de las instancias contempladas en la precitada regla procesal. Ello, pues, la Regla 52.1 establece que ciertos dictámenes interlocutorios pueden: (1) afectar sustancialmente el resultado del pleito, (2) tener efectos limitativos para la defensa o reclamación de una parte, o (3) conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847-848 (2023) (citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal *civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, a la pág. 533).

No obstante, una vez se adquiere jurisdicción a tenor con la Regla 52.1 de Procedimiento Civil, *supra*, la expedición del auto y su adjudicación en los méritos es discrecional. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), delimita los siguientes criterios para ponderar la expedición del auto solicitado:

> *A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*
>
> *B. Si la situación de hechos planteada es la más indicada para analizar el problema.*
>
> *C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *D. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *E. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *F. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Nótese que, la regla precitada facilita que la evaluación respecto a la expedición del recurso no transcurra en el vacío ni en ausencia de otros parámetros. *IG Builders et al. v. BBVAPR*, a la pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Así pues, al examinar si procede la expedición del caso nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra*, a la pág. 849. Por la naturaleza extraordinaria de este recurso, no debemos intervenir en las determinaciones de hechos del Tribunal de Primera Instancia, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**B.**

Es norma reiterada que, la sentencia sumaria es la herramienta procesal que procura la solución rápida, justa y económica de aquellos casos en los que no existen hechos materiales en controversia que ameriten la celebración de un juicio. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Oriental Bank v. Caballero García,* 212 DPR 678 (2023). A tales fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite la presentación de una moción de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

Cónsono con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. Véase, además, *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 472 (2023). En particular, el inciso (a) de la precitada disposición reglamentaria establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

> *(1) Una exposición breve de las alegaciones de las partes;*
>
> *(2) los asuntos litigiosos o en controversia;*
>
> *(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> *(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
>
> *(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*

(6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Ahora bien, la concesión de este mecanismo procesal no es automática, por lo que, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018).[6]  Para ello, tiene que cumplir con los requisitos de la Regla 36.3(b) y (c) de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra*, a la pág. 680.  Así que, no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica.  De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.  32 LPRA Ap. V, R. 36.3(c).  Véanse, además, *Oriental Bank v. Caballero García, supra*, a la pág. 680; *Roldán Flores v. M. Cuebas et al., supra*, a la pág. 677 (2018).

Una vez se presente la solicitud de sentencia sumaria y su respectiva oposición conforme a los requisitos discutidos, el foro primario deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos.  *Consejo Tit. v. Rocca Dev. Corp. et als.*, 25 TSPR 6, 215 DPR __ (2025); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010).  En cuanto a los documentos presentados, "éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos".  *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 735

---

[6] Según la jurisprudencia, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García, supra*, a la pág. 679.

(1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

Por otro lado, como regla general, no es aconsejable dictar sentencia sumaria si hay asuntos de credibilidad que ameritan la celebración de un juicio. A tales efectos, el Tribunal Supremo de Puerto Rico ha validado la aplicación de este mecanismo siempre y cuando no existan controversias esenciales sobre hechos materiales:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994). Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010).

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que es innecesaria una vista en los méritos". *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). En efecto, la concesión de este recurso procede si de la prueba que acompaña a la moción surge preponderantemente la inexistencia de controversia sobre hechos medulares. *CSM v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024). Es decir, el foro primario deberá dictar sentencia sumaria cuando ante los hechos materiales no controvertidos: (1) el promovido no puede prevalecer frente al derecho aplicable, y (2) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García, supra*, a la pág. 679; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

De modo similar, el tribunal puede desestimar por la vía sumaria por insuficiencia de la prueba, lo cual implica que (1) no es necesario celebrar una vista evidenciaria; (3) que el promovido no cuenta con prueba suficiente para probar un hecho esencial; y que, (3) como cuestión de derecho, procede que se desestime la reclamación. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994). Véanse, además, *Ramos Pérez v. Univisión, supra,* a las págs. 217-218; *Reyes Sánchez v. Eaton Electrical,* 189 DPR 586, 595-596 (2013). No obstante, si el foro primario identifica hechos esenciales en controversia le corresponderá denegar la solicitud de sentencia sumaria y establecer aquellos hechos controvertidos e incontrovertidos, según exige la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4.

### C.

La Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1, incorpora a nuestro esquema procesal la figura de la legitimación activa. Así, pues, la legitimación activa "se define como la capacidad que se le requiere a la parte querellante o demandante de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Rivera et al. v. Torres et al.,* 214 DPR 211, 133 (2024); *Hernández, Santa v. Srio. Hacienda,* 208 DPR 727, 739 (2022).

Ahora bien, una parte tiene legitimación activa si exhibe los siguientes requisitos, a saber: (1) haber sufrido un daño claro y palpable; (2) que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético; (3) una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surja bajo el palio de la Constitución o de una ley. *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 943 (2011); *Lozada Tirado et al. v.*

*Testigos Jehová,* 177 DPR 893, 924 (2010). El íntegro cumplimiento de estas exigencias permite demostrar que la parte demandante tiene un interés en el pleito "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* a la pág. 943.

**D.**

Como es sabido, los contratos son fuentes de obligación, según dispone el Art. 1063 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 8984, (Código Civil o Ley Núm. 55-2020). El arreglo contractual se define como, "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Art. 1230, Código Civil, *supra,* 31 LPRA sec. 9751.

De acuerdo con el Art. 1237 de la precitada legislación, "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa". 31 LPRA sec. 9757. En esa dirección, un contrato se considera válido si concurren los siguientes elementos, a saber: (1) el consentimiento de los contratantes, (2) el objeto cierto y (3) la causa de la obligación. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 284 (2021). Una vez la parte presta su consentimiento sobre el objeto y la causa, ésta queda sujeta al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes". Art. 1233, Código Civil (2020), *supra,* 31 LPRA sec. 9754. Esta normativa también aplica a los contratos verbales, los cuales son perfectamente vinculantes en nuestra jurisdicción, salvo que las partes hayan convenido una manera determinada para su formalización o una ley exija una forma determinada para su

validez. Véanse Art. 277, Código Civil (2020), *supra,* 31 LPRA sec. 6161; *Colón Colón v. Mun. de Arecibo,* 170 DPR 718, 730 (2007).

Respecto a la interpretación del negocio jurídico bilateral, el Art. 354 del Código Civil (2020), *supra,* dispone que, si sus términos son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. 31 LPRA sec. 6342. Sin embargo, "[s]i las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado". Íd. Sobre este particular, el Tribunal Supremo de Puerto Rico ha establecido la siguiente normativa referente a la interpretación contractual:

> *[C]uando los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación, por lo que se está al sentido literal de las cláusulas pactadas. Es decir, se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes. Cruz, López v. Casa Bella y otros*, supra a la pág. 995.

Ahora bien, cuando no sea posible interpretar la voluntad, entonces es necesario juzgar la intención los contratantes, a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes. *Íd.*, a la pág. 966. Véase, también, el Art. 354, Código Civil (2029), *supra.* De tal manera, nuestro estado de derecho garantiza el cumplimiento de las obligaciones contractuales sobre las cuales las partes contratantes otorgaron su consentimiento. *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712, 721 (1992). Por lo que, "[u]na vez se determina lo que las partes acordaron, el juzgador debe resolver las controversias entre las partes acorde a lo estipulado". *C.F.S.E. v. Unión de Médicos,* 170 DPR 443, 451 (2007).

**E.**

El término *doing business as* (DBA) o *haciendo negocios como* (HNC) constituye la actividad de celebrar negocios por cuenta propia, pero ocultándose detrás de un nombre que genera la impresión de que existe un negocio separado y distinto del individuo que realiza las transacciones. L.M. Negrón Portillo, *Derecho Corporativo Puertorriqueño*, 2da Ed., 1996, a la pág. 16. Este concepto implica que, no hay una personalidad jurídica separada del que lleva a cabo las gestiones, por lo que, en casos de una reclamación el patrimonio personal del individuo habrá de responder. *Íd.*

En cambio, la corporación goza de personalidad jurídica distinta y separada a la de sus dueños. *Colón y otros v. Báez y otros*, 214 DPR 1062, 1083 (2024); *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011). La figura corporativa facilita el desarrollo de empresas, pues tiene una personalidad jurídica distinta a la de sus miembros o dueños, quienes, por lo general, no responderán con sus bienes personales por los actos de la corporación, sino hasta el monto de su inversión. *Santiago et al. v. Rodríguez et al., supra,* a la pág. 214 (citando a C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, a la pág. 119). Una vez la corporación ostenta personalidad jurídica y, por ende, legitimación activa, puede otorgar contratos y comparecer a una acción civil como demandante o demandada bajo su nombre corporativo o participar en cualquier procedimiento civil, administrativo, de arbitraje o de cualquier otra naturaleza. *Colón y otros v. Báez y otros, supra,* a la pág. 1083; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 87 (2023).

**III.**

De entrada, establecemos que, de conformidad con los criterios recogidos en la Regla 40 del Tribunal de Apelaciones,

*supra,* este foro intermedio apelativo se encuentra en posición de expedir el auto solicitado. En virtud de la discreción que ostentamos, procedemos a resolver la controversia ante nuestra consideración.

En el recurso presente, la parte peticionaria nos invita a revocar la Resolución impugnada, pues considera que no existen hechos esenciales en controversia que impidan dictar sentencia sumaria. Particularmente, sostiene que: (1) la parte recurrida no goza de legitimación activa para instar el reclamo en su carácter personal; (2) el contrato de administración no entró en efectividad; y (3) tampoco existió un acuerdo verbal sobre cuatro proyectos adicionales.

En oposición, la Sra. Cabán señala que existen controversias sustanciales sobre asuntos fácticos pertinentes que imposibilitan dictar el remedio solicitado por la parte peticionaria. Aduce que el tribunal recurrido actuó correctamente al denegar la moción de sentencia sumaria, toda vez que median asuntos medulares de credibilidad que ameritan la celebración de juicio.

Como cuestión principal, precisamos que nos encontramos en igual posición que el foro primario para examinar de *novo* el expediente, y evaluar si la moción de sentencia sumaria y su respectiva oposición se presentaron de conformidad con los criterios procesales. Véanse *Cruz, López v. Casa Bella y otros, supra,* a la pág. 994; *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Tras revisar detenidamente ambos escritos a la luz de la prueba sometida, resolvemos que estos exhiben íntegramente las formalidades que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.*

Atendido lo anterior, nos compete resolver, en segundo lugar, si existen hechos esenciales en controversia que impidan

dictar sentencia sumaria.[7]  Adelantamos que, identificamos en controversia sustanciales de hechos pertinentes que imposibilitan acoger la vía sumaria para resolver este caso.  Por lo que, procede celebrar un juicio en aras de dirimir los asuntos fácticos en disputa.  Veamos.

Surge del expediente ante nos que, las partes suscribieron el Contrato de Administración el 19 de octubre de 2021 respecto a la Urb. Rotonda de Guaynabo.[8]  Del referido pacto se desprende la siguiente información en torno a la comparecencia de las partes:

> *De la primera parte: Rotonda Homeowner Association, Inc., una empresa debidamente registrada bajo las leyes del Estado Libre Asociado de Puerto Rico, con el número de identificación patronal 66-0916162 con oficina ubicada en Guaynabo, Puerto Rico, representada en este acto por su [sic] el Sr. Alejandro Brito, mayor de edad, en adelante "El Contratante"*

> *De la segunda parte: Optimus Property Solution una empresa debidamente registrada bajo las leyes del Estado Libre Asociado de Puerto Rico, con el número de identificación patronal 66-0946402 y con número de registro de comerciante 0339619-0027 representada en este acto por su Presidente Liza M. Cabán, mayor de edad, soltera, empresaria, vecina de San Juan Puerto Rico, en adelante el "Contratista o Agente Administrador".[9]*

Sobre este particular, la Sra. Cabán declaró que celebró dicho acuerdo amparada en la figura de *doing business as*[10], asunto que fue impugnado por la parte peticionaria[11], lo cual tuvo el efecto de controvertir ese hecho alegado.  Por su parte, el Sr. Brito solicitó que se desestime sumariamente la demanda incoada contra él y BDG por entender que ambos no contrataron con la

---

[7] Discutiremos conjuntamente los seis (6) señalamientos de error levantados por la parte peticionaria por estar estrechamente relacionados.

[8] Entrada 42 del SUMAC TPI, Anejo II (Contrato de Administración), a las págs. 1-8.

[9] Entrada 42 del SUMAC TPI, Anejo II (Contrato de Administración), a la pág. 1.

[10] Entrada 42 del SUMAC TPI, Anejo III (Deposición a la Sra. Cabán), a la pág. 31, líneas 1-2.

[11] Entrada 42 del SUMAC TPI, Anejo I (Certificado de Incorporación de Corporación Profesional), a las págs. 1-3, y Anejo II (Contrato de Administración), a la pág. 1.

recurrida. No obstante, la Sra. Cabán controvirtió tal hecho al argumentar que el Sr. Brito actuaba como agente de BDG.[12]

Por otro lado, el Contrato de Administración consta una cláusula, cuyo contenido establece que este entraría en vigor a partir del 15 de octubre de 2021.[13] Sin embargo, la recurrida manifestó que la parte peticionaria impidió la efectividad del contrato[14], mientras que el Sr. Brito indicó que el contrato nunca se hizo efectivo por motivos de una fase de transición.[15] Por último, la parte recurrida aseguró que el Sr. Brito pactó con ella un contrato adicional (verbal) referente a: (1) Finca Elena, (2) Finca Elena Original, (3) Belmont y (4) Bellair[16], pero este negó tal alegación.[17]

Ante tales circunstancias, identificamos que existen hechos esenciales en controversia, los cuales requieren la celebración de un juicio para examinar con sumo cuidado los elementos subjetivos de credibilidad e intencionalidad que se encuentran en disputa. Así pues, contrario a lo argumentado por los peticionarios, colegimos que no resulta viable dilucidar este pleito por la vía sumaria, a base de la exclusiva interpretación del Contrato de Administración. Acoger ese proceder conllevaría un análisis jurídico en desconocimiento de los actos anteriores, coetáneos y posteriores a la celebración de los alegados contratos, y en abstracción de las circunstancias indicativas de la voluntad de las partes.

---

[12] Entrada 44 del SUMAC TPI (Oposición a la Sentencia Sumaria), a la pág. 6, inciso 4; Anejo II (Deposición al Sr. Brito), a las págs. 12 y 15-17.

[13] Entrada 42 del SUMAC TPI, Anejo II (Contrato de Administración), a la pág. 7.

[14] Entrada 42 del SUMAC TPI, Anejo III (Deposición a la Sra. Cabán), a la pág. 81, líneas 8-25, y a la pág. 82, líneas 1-20; Entrada 44 del SUMAC TPI (Moción en Oposición a Sentencia Sumaria), a la pág. 5, inciso 2.

[15] Entrada 42 del SUMACT TPI (Moción de Sentencia Sumaria), a la pág. 10; Entrada 44 del SUMAC TPI, Anejo II (Deposición al Sr. Brito), a la pág. 6, línea identificada bajo la numeración 11:50-12:09.

[16] Entrada 42 del SUMAC TPI, Anejo III (Deposición a la Sra. Cabán), a la pág. 59, líneas 1-14; Entrada 44 del SUMAC TPI (Moción en Oposición a Sentencia Sumaria), a la pág. 6, inciso 3.

[17] Entrada 42 del SUMAC TPI (Moción de Sentencia Sumaria), a las págs. 11-12.

TA2026CE00019 18

En vista de lo anterior, concluimos que el TPI actuó correctamente al denegar la solicitud de sentencia sumaria presentada por la parte peticionaria. Por tanto, nos corresponde ser deferentes al dictamen impugnado, el cual procura alcanzar una solución justa sustentada en la prueba pertinente que desfilará durante la celebración del juicio. En virtud de ello, confirmamos la Resolución recurrida, pues no denota prejuicio, parcialidad o error manifiesto en la aplicación de norma procesal o sustantiva por parte del foro primario.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, expedimos el auto de *Certiorari*, y confirmamos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones